## State v. Lee
*[Cite as 8 AOA 460]*

*Case No. 90CA004741*
*Lorain County, (9th)*
*Decided December 5, 1990*

*Gregory A. White, Prosecuting Attorney, 226 Middle Ave., Elyria, Ohio 44035, for Plaintiff.*

*Hollace Weizel, 522 Broadway, Lorain, Ohio 44052, for Defendant.*

BAIRD, J.

This cause comes before the court upon the appeal of Amos Lee from his convictions and sentences for rape, R.C. 2907.02 (A)(2); felonious assault, R.C. 2903.11(A)(1); two counts of aggravated robbery, R.C. 2911.01(A)(1) and (2); and two counts of kid-napping, R.C. 2905.01(A) (2) and (4). We affirm.

On the evening of December 20, 1988, Tami O'Brien was returning to her car after a brief shopping errand when she was approached from behind by a man she later identified as appellant. Appellant pushed a gun into her side and ordered her into the car. Appellant got in the car after O'Brien and ordered her to drive. As O'Brien drove away from the parking lot, she was followed in a separate car by appellant's co-defendant, Dennis Calhoun, and Janice Grant, a passenger and unwilling observer of the crimes charged.

As O'Brien drove, appellant looked through O'Brien's purse until he found and removed approximately seventy to seventy-five dollars. O'Brien continued to drive for about five or ten minutes, turning onto other roads at appellant's direction. Throughout the drive, appellant struck O'Brien repeatedly in her face with his gun. At appellant's direction, O'Brien stopped the car in a secluded area, where she was orally raped at gunpoint by appellant.

Because of the evening's events, O'Brien does not recall all of what occurred, and she next remembers appellant lying on top of her while removing her clothing. Some time later, O'Brien, dressed, approached a nearby house for help. She was taken to the hospital, where her clothing was preserved for evidence, and a rape evidence collection kit was performed, in which vaginal, oral, and rectal swabs were taken and preserved.

Following an investigation, appellant was identified as O'Brien's assailant. Prior to trial, an evidence collection kit was performed on appellant, preserving samples of his body fluids for analysis. Following a jury trial, appellant was found guilty of rape, felonious assault, two counts of aggravated robbery, and two counts of kidnapping. Appellant raises six assignments of error.

### Assignment of Error I

"The trial court erred to the prejudice of appellant, and in violation of rights conferred by Article I, Section 10, of the Ohio Constitution, and by the sixth and Fourteenth Amendments to the Constitution of the United States, when it refused to appoint new counsel for the appellant."

Between February 21, 1989, and October 11, 1989, appellant filed six motions for ap-

pointment of new counsel. Appellant argues that the trial court's denial of each of these motions was an abuse of discretion, and denied him his constitutional right to competent counsel. We disagree.

An indigent defendant has only a right to competent counsel, not a right to counsel of his own choosing. *Thurston v. Maxwell* (1965), 3 Ohio St. 2d 92. Furthermore, the right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his appointed counsel. *Morris v. Slappy* (1983), 461 U.S. 1, 13. Rather, an indigent defendant is entitled to appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result. *State v. Pruitt* (1984), 18 Ohio App. 3d 50, 57, citations omitted. However,

"***

"[i]f a court refuses to inquire into a seemingly substantial complaint about counsel when he [sic] has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right."

"***." *Id.*

Upon our review of the record, we do not find that the appellant was denied his right to counsel or that the trial court erred in refusing to appoint substitute counsel. The record indicates that appellant's counsel performed extensive pretrial preparations and provided appellant with a thorough and competent defense at trial.

As for the trial court's refusal to investigate appellant's complaints regarding his appointed counsel, the record is replete with instances of appellant's uncooperative and disruptive behavior. This behavior, as well as the apparent competent performance of defense counsel, provided the trial court with ample reason to suspect the bona fides of appellant, and we find no error in the trial court's refusal to inquire into appellant's complaints or to appoint substitute counsel.

Appellant's first assignment of error is overruled.

### Assignment of Error II

"The trial court erred to the prejudice of appellant, and in violation of the due process rights of the appellant, when it denied appellant's motion for the appointment of an expert witness."

During pretrial, the state informed appellant that it would present evidence of DNA (deoxyribonucleic acid) analysis at trial. Appellant moved for, and was granted, an independent DNA analysis of the evidence at state expense. Subsequently, appellant alleged problems with the independent laboratory's analysis, and filed a *pro se* motion for the appointment of another geneticist. The trial court did not rule on this motion, but instead ordered defense counsel to look into the matter and report to the court. Nothing further was done on the matter until the first day of trial, when appellant renewed his motion and the trial court denied the same.

Both the appellant and the state mistakenly argue that our review of the trial court's refusal to appoint a second expert witness should be governed by R.C. 2929.024. That statute addresses the appointment of expert witnesses for indigent defendants only in capital cases, and is inapplicable to the case at bar. However, in construing R.C. 2929.024, the Ohio Supreme Court has identified two factors relevant to the issue of whether a trial court abused its discretion in refusing to provide an indigent defendant with expert assistance:

"1) The value of the expert assistance to the defendant's proper representation; and,

"2. The availability of alternative devices to fulfill the same function as the expert assistance." *State v. Jenkins* (1984), 15 Ohio St. 3d 164, 193. Using these factors as a guide, this court may review the trial court's refusal to appoint a second geneticist at state expense. See, *State v. Scott* (1987), 41 Ohio App. 3d 313, 315.

Initially, we note that appellant made no showing to the court to establish either the reasonableness of his request or the value of a second geneticist to his defense. Instead, his *pro se* motion merely alluded to a recent magazine article that questioned the reliability of the independent laboratory. Furthermore, appellee argues, and the appellant does not dispute, that the request for a second geneticist was not made until after appellant had received unfavorable results from the independent laboratory. Finally, we note that

appellant failed to provide the trial court with further information on the matter after being instructed to do so.

Accordingly, we find no abuse of discretion in the trial court's denial of appellant's request for appointment of a second geneticist. Appellant's second assignment of error is overruled.

### Assignment of Error III

"The trial court erred to the prejudice of appellant, and in violation of due process rights of the appellant, when it denied appellant's motion to suppress identification testimony."

Prior to trial, appellant filed a motion to suppress the identification testimony of O'Brien, arguing that the pretrial identification procedure was impermissibly suggestive and that any identification of appellant at trial would lack an independent basis. Following a hearing, the trial court denied the motion to suppress.

The allegedly suspect identification procedure involved the showing of seven photographs to O'Brien one week after her attack. Two of the photographs were of appellant. Although the two photographs were taken over nine months apart, and show distinct differences in appellant's hairstyle and body build, appellant argues that, pursuant to *Simmons v. United States* (1968), 390 U.S. 377, the photo array was impermissibly suggestive. We do not agree.

In *Simmons,* the Court reviewed a photo array that consisted of at least six group photographs. The defendant appeared in each photograph. While noting that the array fell short of the ideal, the Court held that under the totality of circumstances, the identification procedure was not unnecessarily suggestive. *Id.* at 383, 385-86.

Ohio also follows the totality of circumstances test. See, *State v. Moody* (1978), 55 Ohio St. 2d 64, 67. Although an identification procedure may contain notable flaws, that factor alone does not, *per* se, preclude the admissibility of a subsequent in-court identification. *Id.* Instead, the key issue is the overall reliability of the witness's pretrial identification. *Id.* Factors used to assess the reliability of a pretrial identification include:

"*** the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers* (1972), 409 U.S. 188, 199. Using these factors, we find O'Brien's identification of appellant to be reliable

O'Brien was able to view appellant three or four times during her five to ten minutes drive with him. Furthermore, she testified she could clearly see his face during the approximately five minutes he lay on top of her. As for her degree of attentiveness, we note that a rape victim is "*no casual observer,* but rather the victim of one of the most personally humiliating of all crimes." *Id.* at 200 (Emphasis added). We believe that the nature of the offense, the close quarters in which it occurred, and O'Brien's repeated attempts to view appellant despite his threats to not do so, indicate a high degree of attentiveness on O'Brien's part.

As for the accuracy of O'Brien's initial description of her assailant, appellant admits in his brief that the two photographs of him used in his array fit her initial description. Finally, we find that the levels of certainty exhibited by O'Brien at the various pretrial and trial confrontations demonstrate the reliability of her identification. O'Brien identified the two photographs of appellant as looking familiar to her assailant. She also chose appellant from a lineup of eight men, and told police she thought appellant was her assailant. When she first heard appellant speak at the suppression hearing, she identified him as her attacker on the basis of his voice. Finally, she testified at trial that she was positive appellant was her attacker.

Under the totality of circumstances, we do not find that the identification procedure was impermissibly suggestive or that O'Brien's trial identification of appellant lacked an independent basis. Appellant's third assignment of error is overruled.

### Assignment of Error IV

"The trial court erred to the prejudice of appellant when it denied appellant's motion in *limine,* and permitted the testimony of a forensic expert relating to DNA fingerprinting."

At trial, Federal Bureau of Investigation (FBI) Agent Lawrence Presley testified as to the method and results of a DNA analysis he

performed for the state. Presley compared the DNA in semen samples taken from O'Brien's underclothing and the vaginal swab to the DNA in blood samples taken from appellant, and concluded that the probability that the DNA found in the semen samples came from anyone other than appellant was one in seven million. Appellant argues that the trial court erred in admitting this testimony because the procedures employed by the FBI in DNA analysis are not standardized, and therefore lack reliability. We disagree.

DNA is a long chain of molecules found in every cell of the body. No two individuals, except for identical twins, have identical DNA. DNA will not vary from cell to cell within a given person. Because DNA is too small to be seen with even the most powerful microscope, it is necessary to perform certain chemical procedures to extract, read and compare the "information" contained therein. It is these procedures that appellant argues are not standardized, and thus unreliable. Therefore, he argues, the DNA testimony should have been held inadmissible.

The admissibility of scientific evidence in Ohio is governed by Rules 402, 403 and 702 of the Rules of Evidence. *State v. William* (1983), 4 Ohio St. 3d 53, 57-58. Evid. R. 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

However, Evid. R. 403(a) mandates the exclusion of relevant evidence if its probative value is outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury. Finally, Evid. R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

We have found only one other Ohio appellate decision addressing the admissibility of DNA analysis in criminal prosecutions. *State v. Pierce* (July 9, 1990), Delaware App. No. 89-CA-30, unreported.[1] That court held that, "given the appropriate foundation and compliance with acceptable standards, DNA testimony ... is admissible pursuant to [Evid. R. 702]." This decision is in accord with those of other jurisdictions that have considered the admissibility of forensic DNA analysis; the underlying theory of DNA analysis is generally accepted by both the scientific community and the courts, while the procedures used to conduct the analysis are continually subjected to scrutiny by reviewing courts. See, *e.g., People v. Castro* (N.Y. Sup 1989), 545 N.Y.S. 2d 985; *Cobey v. State* (Md. App. 1989) 559 A. 2d 391; *Andrews v. State* (Fla. App. 1988), 533 So. 2d 841; *Spencer v. Commonwealth* (Va. 1989), 384 S.E. 2d 775.

Upon our review of the record, we find ample support for a conclusion that the procedures used by the FBI complies with accepted standards, and we find that the trial court did not err in admitting testimony on DNA analysis. Presley testified that the procedures involved in his analysis included extraction, purification, and digestion of the DNA separation of the DNA fragments (electrophoresis); splitting of the DNA fragments into strands and transfer of the strands to a nylon membrane (Southern blotting); the use "probe molecules" to identify certain sequences in the strands; and preparation of a "photograph" of the identified sequences for final evaluation and comparison (autoradiograph). This entire process is known as "restriction fragment length polymorphism" (RFLP).

Forensic RFLP analysis has been generally accepted by the scientific community and recognized by other state courts as generally reliable. See, *State v. Schwartz* (Minn. 1989), 447 N.W. 2d 422, 425-26, and cases cited therein. Furthermore, Presley testified that the analysis in this case was performed pursuant to a laboratory protocol developed by the FBI. The FBI's protocol has been identified by other jurisdictions as necessary for reliable analysis results. *Id.* at 426-27. Finally, the evidence was relevant to the issue of the identity of O'Brien's attacker (Evid. R. 402), and assisted the jury in making that determination (Evid. R. 702). Thus, we find no merit to appellant's argument that the DNA analysis was unreliable and should have been excluded.

Appellant also argues that the trial court erred in admitting the DNA testimony be-

cause the state urged its admittance under the so-called *Frye* standard, which is not followed in Ohio. See, *Frye v. United States* (D.C. Cir. 1923), 293 F. 1013. Appellant presumes that because the state argued the incorrect standard of admissibility, the trial court used this incorrect standard to admit Presley's testimony. We disagree.

We find nothing in the record to indicate that the trial court incorrectly applied the *Frye* standard. It is well settled that all reasonable presumptions consistent with the record will be indulged in favor of the validity of the decision under review. *In re Sublett v. Hall* (1959), 169 Ohio St. 19, 20; *Coleman v. McGettrick* (1965), 2 Ohio St. 2d 177, 180. To accept appellant's assertions would be to ignore this presumption of regularity.

Appellant's fourth assignment of error is overruled.

### Assignment of Error V

"The trial court erred to the prejudice of appellant when it refused to instruct the jury on the testimony of an accomplice, as requested by appellant."

Appellant contends that the issue of whether a witness was an accomplice must be submitted to a jury in a charge that contains the definition of accomplice. Accordingly, he argues, the trial court erred in refusing to instruct the jury as follows:

"You have heard testimony from a person who is said to be an accomplice. An accomplice is one who knowingly assists another in the commission of a crime.

"Whether that person is an accomplice and the weight to give her testimony are matters for you to determine from all the facts and circumstances in evidence.

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

"It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

"An accomplice may have special motives in testifying, and you should carefully examine an accomplice's testimony and use it with great caution and view it with grave suspicion."

A defendant is entitled to have his requested instruction included in the charge to the jury only where the instruction is correct, pertinent, and timely presented. *Cincinnati v. Epperson* (1969), 20 Ohio St. 2d 59, paragraph one of the syllabus. We find that the requested charge was unwarranted by the evidence and, therefore, not pertinent.

The term "accomplice" means:

"***[o]ne who is guilty of complicity in crime charged, either by being present and aiding or abetting in it, or having advised and encouraged it, though absent from place when it was committed, though mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough, no matter how reprehensible it may he, to constitute one an accomplice. ***." *State v. Wickline* (1990), 50 Ohio St. 3d 114, 117-18 (citations omitted). Nothing in the record supports appellant's assertion that Janice Grant was an accomplice.

Grant testified as a witness for the state, asserting that she was merely a passenger in Dennis Calhoun's car, and became an unwilling witness to the crimes charged against Calhoun and appellant. No charges were sought against her. Her mere presence in the car, without more, is insufficient to establish accomplice status. *State v. Sims* (1983), 10 Ohio App. 3d 56. Finally, appellant relied upon the defense of mistaken identification at trial, thus not implicating Grant in any way.

Based upon the proof presented at trial, the trial court did not err in refusing to instruct the jury as requested, and appellant's fifth assignment of error is overruled.

### Assignment of Error VI

"The trial court erred to the prejudice of appellant when it sentenced to [sic] appellant to concurrent sentences on counts one and two of the indictment, and counts four and five of the indictment, where such multiple convictions are prohibited by O.R.C. 2941.25."

The record indicates, and counsel for appellant admitted at argument, that appellant failed to enter a contemporaneous objection to his sentencing. This court need not review claimed errors that the appellant could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Williams* (1977) 51 Ohio

St. 2d 112, paragraph one of the syllabus, vacated on other grounds, (1978), 438 U.S. 911. Appellant's sixth assignment of error is overruled.

The judgment of the trial court is affirmed.

QUILLIN, P.J., and CIRIGLIANO, J., concur.

_____

[1] In addition, the Ohio Supreme Court has commented favorably on the use of forensic DNA analysis. *State v. Apanovitch* (1987), 33 Ohio St. 3d 19, 30 at fn. 4 (Brown, concurring).