THE STATE OF OHIO, APPELLEE, *v.* HANCOCK, APPELLANT.

(No. 75-1070—Decided December 8, 1976.)

148

Mr. *George C. Smith*, prosecuting attorney, and *Mr. David J. Graeff*, for appellee.

*Ms. Carolyn A. Watts, Mr. James Kura* and *Mr. C. William Lutz,* for appellant.

HERBERT, J. Appellant contends initially that the submission to a jury, over the objection of the defendant, of three specifications of aggravation under one count of aggravated murder, pursuant to R. C. 2929.04(A), where each specification presents a different premise of aggravating circumstances, constitutes reversible error.

Imposition of the death penalty for aggravated murder in this state is precluded unless "one or more" of statutorily specified criteria is identified in the indictment or count in the indictment, pursuant to R. C. 2941.14, and is proved beyond a reasonable doubt. R. C. 2929.03(B) and 2929.04(A). The amended indictment returned against appellant included four specifications of aggravation under

R. C. 2929.04(A). The state presented the following three of these specifications under the second count of the indictment:

First, said offense was committed for the purpose of escaping detection, apprehension, trial or punishment for another offense committed by the offender;

Second, said offense was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender;

Third, said offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery. These specifications are those provided for by R. C. 2929.04(A)(3), (5), and (7) respectively.

Appellant recognizes that R. C. 2929.03(B) and 2929.04(A) both include the language "one or more" in reference to the specifications of aggravating circumstances which must be included in a capital indictment, but argues that an indictment for murder should contain more than one of these specifications only when the indictment and specifications taken as a whole alleges one consistent theory as to the character of the crime and the frame of mind of the accused in order to justify the death penalty. According to appellant, the three above-referenced specifications failed to allege such a single, consistent theory.

We are not pursuaded that three specifications of aggravation must be mutually exclusive. A consistent theory of an offense can encompass mixed motives; for example, the trier of facts could logically find, in a proper case, that an accused simultaneously intended both a second killing and the elimination of a witness to an escape from the scene of a first killing.

In an indictment for aggravated murder, a grand jury may state one or more specifications under one count when issuing the indictment, and the submission to a jury of one or more specifications of aggravation under one count in an indictment for murder, where each such specification presents a different premise of aggravating circumstances, does not necessarily constitute reversible error.

Appellant urges further that he was denied due process of law through a pretrial photographic identification procedure which was unnecessarily suggestive and which was conducive to irreparable mistaken identification at the trial. He notes that when witness Wheatley spoke with the police on the night in question, he described the killer of Anderson as a man whose hair was done in "knots." Under cross-examination at trial, Wheatley indicated that of the photographs shown him thereafter by police, appellant's was the only one of a person with "knots" in his hair.

The United States Supreme Court speaks of photographic identification in *Simmons* v. *United States* (1968), 390 U. S. 377, 384:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See, *State* v. *Breedlove* (1971), 26 Ohio St. 2d 178, 271 N. E. 2d 238. See, also, *State* v. *Jackson* (1971), 26 Ohio St. 2d 74, 269 N. E. 2d 118; and *State* v. *Wilkinson* (1971), 26 Ohio St. 2d 185, 271 N. E. 2d 242.

In this case, appellant was identified at trial by two witnesses: Wheatley and Lawson. Examination of the

trial transcript discloses that both of these in-court identifications withstood vigorous cross-examination by counsel for appellant.

Witness Wheatley testified that the lighting was bright at the time of the Anderson shooting. He himself was only "about one good step" from precisely where the crime occurred; his face was burned by the blast and he felt the smoke from the gun.

Witness Lawson obtained only a brief view of the assailant at the time of the shooting. However, she testified as to the assailant's walking in front of the skating rink, as to his pointing a gun and as to his shooting the decedent; she added that there were lights burning in that area.

We conclude from the record at bar that the pretrial photographic identification procedure employed in this case was not so impermissibly suggestive as to give rise to a "very substantial likelihood of irreparable misidentification" at the trial. *Simmons* v. *United States, supra.*

Appellant argues also that the evidence against him was insufficient to warrant submission of the case to the jury and insufficient to support a guilty verdict. He states that the evidence was not irreconcilable with any reasonable theory of his innocence.

Crim. R. 29(A) provides that the trial court, upon motion of a defendant or its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. Appellant contends that Crim. R. 29(A) is essentially identical to Federal Rule of Criminal Procedure 29, and that the most appropriate of various interpretations of the latter has been stated by the Sixth Circuit Court of Appeals in *United States* v. *Collon* (1970), 426 F. 2d 939. That court observed, at page 942:

"In determining the sufficiency of the evidence to withstand a motion for a judgment of acquittal, the evidence and all reasonable inferences that may be drawn

therefrom must be viewed in the light most favorable to the government. * * * And if under such view of the evidence it is concluded that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury. However, if under such view of the evidence it is concluded there must be some doubt in a reasonable mind, the motion for acquittal must be sustained. * * *"

Assuming, *arguendo*, that Crim. R. 29 parallels Federal Rule of Criminal Procedure 29, and that *Collon* correctly interprets that rule, it cannot be concluded from the evidence in the instant case that there *must* be some doubt in a reasonable mind as to the guilt of appellant.

The evidence before the trial court included, as to the murder of Herman Anderson, the in-court identification of appellant by two eyewitnesses, two pretrial photographic identifications of appellant by eyewitnesses, evidence of an "argument" between Anderson and appellant, the expulsion from the skating rink of appellant by Anderson, the return of appellant to the rink and his statement to Anderson, "I told you I'll be back," made at the time of the shooting. The evidence before the trial court as to the Martin homicide showed that the victim was shot within the same general vicinity and timespan as Anderson, and that both Anderson and Martin were killed with the same weapon.

As we view the record herein, the verdict of the jury is supported by sufficient probative evidence, and the cause was properly submitted to the jury for its deliberation.

Appellant's final argument is that the imposition of capital punishment constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. In view of this court's decision in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, this proposition is not well taken.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.