THE STATE OF OHIO, APPELLEE, *v.*
SCOTT, APPELLANT. ▮

(No. 52736—Decided
November 9, 1987.)

*John T. Corrigan,* prosecuting attorney, and *Carmen M. Marino,* for appellee.

*Dexter W. Clark* and *James R. Willis,* for defendant Marvin Scott.

MARKUS, J. The defendant appeals from his jury trial convictions for kidnapping and rape. His nine assignments of error complain that the court declined to (a) appoint an experimental psychologist at public expense as a prospective witness, (b) suppress the victim's identification testimony, (c) provide additional jury instructions about the significance of alibi evidence, (d) allow evidence that the police conducted a polygraph examination of the victim, and (e) grant a new trial for allegedly concealed exculpatory impeachment evidence. None of these contentions has merit, so we affirm the trial court's judgment.

I

The state presented testimony from five witnesses: the victim, her companion earlier that evening, and three police personnel. The victim stated that she attended a rock music concert at the Cleveland Stadium with three companions, a man and two women. When the concert ended near 11:00 p.m. they all returned to the van in which they had come to the concert. An argument ensued, and the three

women left the van to walk in the downtown area.

The victim said that during further argument among the three women, a man twice approached them and asked whether they had a problem. The victim identified that man as the defendant. One of the victim's companions testified that a man whose general description matched the defendant approached them, but she was not asked whether she could identify the defendant as that man.

According to the victim, she separated from her two women companions after about fifteen minutes to call her father for a ride home. Approximately fifteen minutes later, the defendant approached her, pressed a gun in her back, and threatened to kill her if she did not accompany him. The defendant forced her to walk for twenty minutes, and then to crawl through a fence opening into an area near some abandoned buildings. When they arrived there, he struck her repeatedly and raped her, during another twenty-five to forty-minute interval.

After her assailant left, she ran to a nearby intersection from which a passing motorist transported her to a hospital. She remained at the hospital for two or three hours. When her father came to take her home, he unintentionally drove past the area where she had been assaulted. She immediately recognized the area and later described that place and her assailant for the police. When the police returned to that area they found and photographed two combs and a bottle cap that fell from the victim's purse during the assault there.

Five days after the rape, the police asked the victim to review approximately five hundred slides. They all depicted men of the same race and approximately the same age. She selected and positively identified two photographs of the defendant as pictures of the man who raped her. One week later, she saw the defendant at the police station before the police charged him, again identified him, and accused him of raping her. Police personnel confirmed her positive identifications of the defendant on both those occasions.

At the trial, the victim expressed certainty about her identification of the defendant as her assailant. She gave a detailed description of his clothing then, the site of the assault, and the surrounding street lights. In her testimony, she also identified the objects which the police found at the assault scene, and photographs of her injuries and her blood-stained clothing.

For his defense, the defendant called two witnesses who testified that he was watching television at their home when the rape occurred. Both of these witnesses had known the defendant for twenty-one years. They denied that he had a goatee beard, which the victim ascribed to her assailant.

## II

Appellant's first, second and fourth assigned errors relate to the admissibility of expert testimony concerning eyewitness identification. Before addressing any questions relating to the admissibility of such testimony, the court must consider whether the trial court abused its discretion in denying the indigent defendant's motion to have the state provide him with an expert on eyewitness testimony. We conclude that the trial court did not abuse its discretion when it declined to provide appellant with expert assistance at state expense.

Fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system. *Britt* v. *North Carolina* (1971), 404 U.S. 226,

227. The inquiry has focused on identifying the "basic tools" of an adequate defense or appeal. *Britt, supra; Ake* v. *Oklahoma* (1985), 470 U.S. 68, 77. In other words, the state must provide indigent defendants with all reasonably necessary assistance. See R.C. 2929.024 (investigation services and experts for indigents relating solely to aggravated murder cases); cf. Crim. R. 17(B) (providing that the court shall order subpoenas upon a satisfactory showing that defendant is unable to pay the witness fees and the presence of the witness is necessary to an adequate defense).

In *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, the Ohio Supreme Court, construing the "reasonably necessary" language of R.C. 2929.024, set forth two factors relevant to consideration of whether the trial court abused its discretion in denying a funding request for expert assistance:

1. The value of the expert assistance to the defendant's proper representation; and

2. the availability of other means to satisfy that need.

*Id.* at 193, 15 OBR at 336, 473 N.E. 2d at 292; cf. *Britt* v. *North Carolina, supra,* at 228-229. Using the factors set forth in *Jenkins* as a guide, we examine the trial court's ruling to determine whether it abused its discretion in denying the defendant's request for an appointed expert on eyewitness identification.

In every case where an indigent defendant seeks state-funded expert assistance, the indigent defendant has the initial burden of establishing the reasonableness of his request. At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision. See *Ake* v. *Oklahoma, supra,* at 83. Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate. *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, 323-324, fn. 1.

The trial judge did not abuse his discretion in denying appellant's motion for an appointed expert. Defendant made no showing to the court that established the reasonableness of his request. The record shows that defense counsel merely asserted that the proposed expert would testify as to the variables and scientific problems of eyewitness identification. There was nothing in the motion which would satisfy the requirement for a preliminary showing that due process rights are involved. Absent a showing of the value of the sought-for expert assistance, the motion was properly denied since there was no basis with which the trial court could make a decision. *Caldwell, supra.*

Moreover, even had the defendant satisfied the preliminary showing, the availability of other means obviated the necessity for expert assistance. Defense counsel can conduct cross-examination of the eyewitness. Any inconsistencies or failings in the eyewitness identification may be brought to light at that time. Counsel may comment on the witness's testimony during closing argument. We are confident that ordinary jurors have the capacity to assess the circumstances surrounding an eyewitness identification in order to ascertain its accuracy.

We conclude that it was not error for the trial court to deny the motion for a state-funded expert on eyewitness testimony when defendant failed to make a showing that the request was reasonable.

Consequently, we overrule the first, second, and fourth assignments of error.

## III

Defendant's third, fifth, and sixth assignments contend that the police

improperly induced the victim to identify him, so her testimony had no weight. He argues that (a) the police slides impermissibly suggested his identification, (b) his in-person identification denied his right to counsel, and (c) the court lacked evidence to convict him without the victim's identification testimony.

Contrary to the defendant's argument, the photographic identification procedure was not suggestive in this case. Cf. *State* v. *Hancock* (1976), 48 Ohio St. 2d 147, 150-151, 2 O.O. 3d 333, 335, 358 N.E. 2d 273, 275-276; *State* v. *Simpson* (1982), 8 Ohio App. 3d 50, 51, 8 OBR 53, 55, 455 N.E. 2d 1337, 1339. It was certainly not so impermissibly suggestive that the court had reason to suppress it for creating a substantial likelihood of misidentification. Cf. *State* v. *Sims* (1984), 13 Ohio App. 3d 287, 288, 13 OBR 351, 353, 469 N.E. 2d 554, 556-557.

The police gave no directions or suggestions as the victim reviewed approximately five hundred slides, which depicted men of the same race and the same age group. Approximately half had facial hair, and half did not. The defense has not demonstrated anything suggestive about the photographs or the procedure used to display them.

The victim's view of the defendant in the police station was suggestive, since he was the only black male present. See *Stoval* v. *Denno* (1967), 388 U.S. 293, 302. However, it was not likely to create a substantial likelihood of misidentification in all the surrounding circumstances. Cf. *Neil* v. *Biggers* (1972), 409 U.S. 188, 198-199; *State* v. *Strodes* (1974), 42 Ohio App. 2d 8, 9-10, 71 O.O. 2d 49, 50-51, 325 N.E. 2d 899, 900-901. The victim reportedly saw him clearly when the offense occurred eleven days earlier and had positively identified him one week earlier in an untainted procedure.

Neither identification procedure offended the defendant's Sixth Amendment right to counsel. He had no right to counsel at a show-up prior to any formal charge. *Kirby* v. *Illinois* (1972), 406 U.S. 682, 688; *State* v. *Stricklen* (1980), 63 Ohio St. 2d 47, 49-50, 17 O.O. 3d 29, 30, 406 N.E. 2d 1110, 1111-1112. He had no right to have counsel present at a photographic identification if he was not there, whenever it occurred. *United States* v. *Ash* (1973), 413 U.S. 300, 321; *State* v. *Perryman* (1976), 49 Ohio St. 2d 14, 22, 3 O.O. 3d 8, 13, 358 N.E. 2d 1040, 1046.

Thus, there was no reason for the court to suppress evidence about the victim's identifications of the defendant before or during the trial. Hence, there was adequate evidence to support the jury's verdict. We overrule the third, fifth, and sixth assignments of error.

## IV

The seventh assignment contests the court's denial of a defense request to instruct the jury differently about alibi evidence. The eighth disputes the court's exclusion of evidence about a police polygraph test for the victim. The ninth challenges the denial of his motion for a new trial because the prosecutor allegedly concealed exculpatory evidence.

The court declined defense counsel's request to give the jury the following instruction:

"The court instructs you further that the defendant need not prove such alibi by the preponderance of the evidence (that means the greater weight of the evidence) nor does he need to establish it beyond a reasonable doubt."

Instead, the court instructed the jury:

"Every person accused of an offense in essence is presumed innocent until proven guilty beyond a reasonable doubt.

"A defendant must be acquitted unless the State produced evidence which convinced you beyond a reasonable doubt of every essential element of any crime charged in the indictment.
"* * *

"[Elements of rape and kidnapping stated and defined]

"In this case the Defendant claimed that he was at some other place at the time the offense occurred.

"This is known as 'alibi.' The word 'alibi' means elsewhere or a different place.

"If the evidence fails to establish the Defendant was elsewhere, such failure does not create an inference that the Defendant was present at the time when and at the place where the offense took place.

"If after a consideration of the evidence of alibi, along with all the evidence, entirely, you are not convinced beyond a reasonable doubt that the Defendant was present at the time in question, you must return a verdict of not guilty, according to your findings."

The court need not give a proposed instruction in the precise language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles. *State* v. *Nelson* (1973), 36 Ohio St. 2d 79, 65 O.O. 2d 222, 303 N.E. 2d 865, paragraph one of the syllabus; *Cincinnati* v. *Epperson* (1969), 20 Ohio St. 2d 59, 61, 49 O.O. 2d 342, 343, 253 N.E. 2d 785, 787. In this case, the court's language adequately instructed the jury on the proposed subject. Indeed, the defendant's proposed language would inject confusion by denying a burden which no one asserted, using a standard of proof otherwise inapplicable to this case.

During his cross-examination of an investigating officer, defense counsel asked whether the officer ever disbelieved the victim. When the officer replied that he had never doubted her veracity, defense counsel sought to show that he had arranged for her to have a polygraph examination. Defense counsel contended that the officer thereby expressed some doubt about the victim's credibility, so the proffered evidence would contradict his preceding answer.

The prosecutor represented to the court that the police arranged polygraph tests for both the victim and the defendant. He further represented that the tests supposedly confirmed the victim's veracity but failed to confirm the defendant's veracity. The court sustained the prosecutor's objection to any evidence on this subject.

The officer's belief about a witness's credibility had dubious probative value. When defense counsel requested this collateral if not improper evidence, he did not thereby acquire a right to impeach the answer. *Schwartz* v. *Wells* (1982), 5 Ohio App. 3d 1, 3, 5 OBR 1, 3, 449 N.E. 2d 9, 11-12. Moreover, evidence about polygraph tests is generally inadmissible absent special safeguards which were not shown here. *State* v. *Whitmeyer* (1984), 20 Ohio App. 3d 279, 280, 20 OBR, 370, 371, 485 N.E. 2d 1055, 1056; *State* v. *Woodruff* (1983), 10 Ohio App. 3d 326, 327, 10 OBR 532, 533, 462 N.E. 2d 457, 458-459.

Indeed, the mere mention of a polygraph examination without evidence as to its outcome can cause reversible error in some cases. *E.g.*, *State* v. *Harris* (Oct. 3, 1984), Hamilton App. No. C-830927, unreported. Consequently, the court did not abuse its discretion by excluding that evidence here.

Finally, the defendant complains that the court should have granted a new trial because the state withheld exculpatory evidence, despite his applicable discovery request. See Crim. R. 16(B)(1)(f); cf. *Brady* v. *Maryland*

318

(1963), 373 U.S. 83; *United States* v. *Agurs* (1976), 427 U.S. 97, 103. The defense claimed that the state concealed the victim's uncertainty regarding her identification of the defendant at the police station.

To prove that contention, the defense offered testimony at the motion hearing from the defendant and the defendant's nephew. The nephew stated that he overheard the victim tell the attending officers about her uncertainty. The nephew also stated that he promptly told the defendant what he heard and repeated it to the defendant six times before the trial ended. The defendant testified that his nephew had told him about the victim's uncertainty, but he neglected to tell his lawyer about it.

The police officers had testified at the trial that they did not hear the victim express any uncertainty. At the motion hearing, the state opened its file to defense counsel to show that they had no knowledge about the victim's supposed statements.

The state has no duty to disclose information about which it has no knowledge. In this case, the defendant apparently had the knowledge which he now claims the state should have disclosed. Additionally, the defendant failed to demonstrate that the allegedly concealed information would have probably changed the outcome. Consequently, it would not justify a new trial. *United States* v. *Bagley* (1985), 473 U.S. 667, 682. The court properly exercised its discretion in denying the requested new trial.

We overrule the seventh, eighth, and ninth assigned errors, and affirm the defendant's convictions.

*Judgment affirmed.*

NAHRA, C.J., and PATTON, J., concur.