OPINION
Ronald Booker appeals from his conviction and sentence for trafficking in crack cocaine.
After receiving complaints about drug sales in the Whitney Young Estates apartment complex, Dayton Police Detective Bradley Barnett went to that apartment complex to investigate on the evening of January 17, 1998. Det. Barnett was in plain clothes and was driving an unmarked car.
Upon arriving at the complex, Det. Barnett observed a man, later identified as Ronald Devoise, walking through the parking lot. When Det. Barnett approached him, Devoise came over to the driver's window of Barnett's car and asked Barnett "what he was looking for." Barnett responded that he was "looking for a forty," meaning forty dollars worth of crack cocaine. Devoise directed Barnett to park in front of the apartment building at 4414 Germantown Pike.
Det. Barnett watched as Devoise entered one of the apartments. The lights in that apartment were on and the blinds were open, and Det. Barnett could see Devoise talking to another man, later identified as Defendant, Ronald Booker. After a short time both Devoise and Booker exited the apartment and approached Barnett's vehicle.
Devoise asked Barnett if he was a police officer. Barnett assured the two men he was not. Defendant Booker then handed Barnett some crack cocaine and said, "here you go." When Barnett inquired about the quantity and quality of the cocaine, Booker responded, "that's a good 40." Det. Barnett handed Booker two twenty dollar bills. Booker and Devoise began walking away, and when Det. Barnett asked who he should ask for the next time Devoise pointed to Booker and said, "ask for Ron." Back at his office, Det. Barnett conducted a field test on the substance Booker had just sold him, which tested positive for crack cocaine.
In an effort to identify the person who had sold him the crack cocaine, Det. Barnett used the police computer system to obtain the names of fifteen people who had given 4414 Germantown Pike as their address when arrested previously. Two of the names were a derivative of Ron, Ronald Devoise and Ronald Booker. Det. Barnett also reviewed a Dayton Police Department book that lists the names of people arrested, along with identifying information concerning them. Det. Barnett discovered that Ronald Booker had identifiers which resembled the man who had sold him the crack cocaine. Det. Barnett contacted the Montgomery County Sheriff's Department and was able to obtain a photograph of Defendant Ronald Booker. Upon seeing the photograph, Det. Barnett immediately identified Ronald Booker as the man who had sold him the crack cocaine.
Ronald Booker was subsequently indicted on one count of trafficking in crack cocaine, in violation of R.C. 2925.03(A). Prior to trial, Ronald Booker moved to suppress Det. Barnett's identification testimony based upon an impermissibly suggestive photo identification procedure. The trial court overruled Booker's motion to suppress following a hearing.
A jury trial began on January 20, 1999. At the conclusion of trial Booker was found guilty as charged and subsequently sentenced to five years of community control sanctions.
From his conviction and sentence Ronald Booker has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS IDENTIFICATION TESTIMONY FROM THE STATE'S SOLE EYEWITNESS, AS THE IDENTIFICATION WAS IRREPARABLY TAINTED BEFORE TRIAL BY AN UNFAIR AND IMPROPERLY SUGGESTIVE PHOTOGRAPHIC IDENTIFICATION PROCEDURE.
Booker argues that Det. Barnett's identification of him at trial as the person who sold him crack cocaine at the time and place alleged was tainted by the pretrial identification procedure that Det. Barnett employed.
"Photographic identifications may be tainted due to the manner in which the photos are arranged, the nature of the photograph selected, and the conduct of the officers presenting them to the witness." 1 Katz/Gianelli, Baldwin's Ohio CriminalLaw (1996) 598, Chp. 28.4. To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and that the identification itself was unreliable under that totality of the circumstances. Manson v.Braithwaite (1977), 432 U.S. 98, 106, 97 S.Ct. 2243,53 L.Ed.2d 140: Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401: State v. Broom (1988), 40 Ohio St.3d 277.
The test for suppression of identification evidence as the product of undue suggestion requires the court to weigh the witness' opportunity to obtain a reliable basis for his later identification of an accused from photographs against the corrupting effect of the suggestive identification itself.Manson, supra, 432 U.S., at 114. This assumes a suggestive identification procedure, that is, one which suggests to the witness a particular identification that the presenter desires to procure.
We need not consider whether Det. Barnett had a sufficient opportunity to obtain a reliable basis for his later identification of Defendant Booker from photographs, though we believe that the evidence is plain that he did, because there was no suggestive identification procedure to corrupt his later testimony. To find that there was, we would have to conclude that Det. Barnett corrupted his own testimony by intentionally pursuing a course of investigation that suggested a result to himself of which he was unaware. The absurdity of that view is too evident for further comment.
Booker's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE COURT ERRED IN ADMITTING THE CRACK COCAINE AS EVIDENCE AT TRIAL BECAUSE OF THE BROKEN CHAIN OF EVIDENCE.
Booker contends that the trial court erred when it admitted into evidence the crack cocaine which forms the basis for the charge against him. According to Booker, this evidence was not properly identified or authenticated due to an incomplete or broken chain of custody.
Evid.R. 901(A) governs what is sufficient with respect to authentication and identification of an item of evidence:
 The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Although the State has the burden to establish a chain of custody, that burden is not absolute and can be satisfied by a showing that it is reasonably certain that substitution, alteration, or tampering did not occur. State v. Brown. (1995),107 Ohio App.3d 194.
Det. Barnett testified at trial that after Ronald Booker had sold him the crack cocaine, Barnett took the substance back to his office and field tested it. When the substance tested positive for crack cocaine, Det. Barnett placed it in a manila envelope, sealed it with blue evidence tape, attached a property tag to it which Barnett signed and dated, and placed it in the Dayton Police Department property room along with a request for laboratory analysis.
Timothy Duerr, a forensic chemist with the Miami Valley Regional Crime Lab, testified at trial that the crime lab received the envelope containing the suspected crack cocaine from the Dayton Police Department, still sealed with the blue evidence tape intact and Det. Barnett's initials on it. After Duerr opened the envelope and tested the substance, he placed it back in the envelope, sealed it with red evidence tape, signed and dated it, and placed the envelope back in the crime lab property room for return to the Dayton Police Department. When the envelope was presented to Duerr at trial, it was still sealed with the red evidence tape he put there.
This evidence is sufficient to show that it is reasonably certain that substitution, alteration, or tampering did not occur, and supports a finding that this matter is what its proponent claims, the crack cocaine Ronald Booker sold to Det. Barnett. The trial court did not err, much less abuse its discretion, in admitting the evidence concerned.
Booker's second assignment of error is overruled.
 THIRD ASSIGNMENT OR ERROR INEFFECTIVE ASSISTANCE OF COUNSEL CREATED A REASONABLE PROBABILITY THAT, IN THE ABSENCE OF HIS ERRORS, THE RESULT OF THE TRIAL WOULD HAVE BEEN DIFFERENT.
Booker asserts that defense counsel's performance was constitutionally deficient because counsel failed to request the appointment of an eyewitness identification expert to aid the defense. According to Booker, there is a reasonable probability that such expert testimony would have aided the defense by refuting commonly held false assumptions about eyewitness identifications, and explaining the variables that may have distorted the accuracy of Det. Barnett's identification.
In State v. Mason (1998), 82 Ohio St.3d 144, the Ohio Supreme Court discussed when expert assistance must be provided to an indigent criminal defendant at State expense:
 Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, does not require the government to provide expert assistance to an indigent defendant in the absence of a particularized showing of need. Nor does it require the government to provide expert assistance to an indigent criminal defendant upon mere demand of the defendant. We observed in State v. Broom (1988), 40 Ohio St.3d 277, 283, 533 N.E.2d 682, 691, that, pursuant to Ake and its progeny, in order to establish a violation of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, "`a defendant must show more than a mere possibility of assistance from an expert. Rather, a defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial.'" Quoting Little v. Armontrout (C.A.8, 1987), 835 F.2d 1240, 1244.
* * *
 Accordingly, we hold that due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial.
Id. at 150.
Speaking on the same subject, this court in State v.Hutchinson (May 10, 1995), Montgomery App. No. 13993, unreported, observed:
 "In every case where an indigent defendant seeks state-funded expert assistance, the indigent defendant has the initial burden of establishing the reasonableness of his request." State v. Scott (1987), 41 Ohio App.3d 313, 315. Put another way, the defendant must present the trial court with sufficient facts to demonstrate the value of the expert assistance to his defense. Id. As we recently stated:
 "When a trial court entertains an indigent defendant's motion for the appointment of an expert at the state's expense, it acts as the guardian of public funds, an increasingly scarce resource. It is not unreasonable to require the defendant to show with some particularity that the expenditure of public funds will have a sufficient potential to affect the outcome of the trial to justify the expenditure." State v. Saylor (May ___, 1995), Champaign App. No. 94-CA-10, unreported, at 12.
 Moreover, even in cases where an indigent defendant establishes the value of expert assistance to his defense, a court still does not abuse its discretion by refusing to provide the accused with state-funded expert assistance when there are other adequate means available which obviate the need for such assistance. Id.
To be admissible, expert testimony must either relate to matters beyond the knowledge or experience possessed by lay persons, or dispel a misconception common among lay persons. Evid.R.702(A). While expert testimony on the variables that may impair the accuracy of a typical eyewitness identification is admissible, expert testimony applying those variables to or discussing the accuracy of a particular witness' identification is not admissible, absent some showing that the witness had a physical or mental impairment which would affect his ability to observe or recall details. State v. Buell (1986), 22 Ohio St.3d 124; State v. Broom (1988), 40 Ohio St.3d 277.
Booker has made no suggestion in this case, much less a particularized showing, that Det. Barnett suffers from any physical or mental impairment which might have affected his ability to observe or recall details. Moreover, this court has previously stated that "we too are confident that ordinary jurors have the capacity to assess the circumstances surrounding an eyewitness identification in order to ascertain its accuracy."Hutchinson, supra.
In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court held that ineffective assistance of trial counsel violates a criminal defendant's Sixth Amendment right to counsel, and it set the standard for determining whether a counsel's assistance was constitutionally ineffective. This standard, subsequently adopted by Ohio in State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, requires a defendant to satisfy a two-part test.
First, the defendant must demonstrate that his counsel's representation was deficient by showing that counsel's performance fell below an objective standard of reasonable representation.Id., at 141, 538 N.E.2d 373.
Second, the defendant must prove that his trial counsel's deficient performance resulted in prejudice to the defendant.Id., at 142, 538 N.E.2d 373. To prove prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, supra.
The United States Supreme Court has stated that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ."Strickland, supra, at 689. This Court has stated that, under Ohio law, a licensed attorney is presumed competent. State v.Estes, (May 31, 1996), Montgomery App. No. 15419, following,Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301, 209 N.E.2d 164. Further, we have held that "counsel's performance will not be deemed ineffective unless and until" the defendant has met the requirements of Strickland and Bradley. Estes, at 3. In reviewing a claim of ineffective assistance of counsel, a court must consider the totality of the evidence. Bradley, supra.
On this record, expert testimony regarding the credibility or accuracy of Det. Barnett's identification of Ronald Booker was not admissible. Buell, supra; Broom, supra. Moreover, these jurors were competent to assess the circumstances surrounding Barnett's eyewitness identification to determine its accuracy. Hutchinson,supra. In other words, that is not a matter beyond the knowledge and experience of common lay persons. Evid.R. 702. Furthermore, the need for expert assistance in this case was obviated by the availability of other, adequate means to challenge the accuracy of Det. Barnett's eyewitness identification testimony. Defense counsel cross-examined Det. Barnett on various factors affecting the accuracy of his identification, and commented repeatedly upon such in closing argument.
Clearly, Ronald Booker has not demonstrated a reasonable probability that expert assistance would have aided his defense, and that denial of an eyewitness identification expert resulted in an unfair trial in this case. Therefore, Booker has not demonstrated that he was entitled to such expert assistance in this case. Accordingly, Booker has failed to demonstrate that defense counsel performed in a constitutionally deficient manner by failing to request that expert assistance, much less any resulting prejudice from counsel's deficient performance.
Booker's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE JURY VERDICT WAS UNSUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. Statev. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley
(October 2, 1997), Champaign App. No. 97-CA-03, unreported.
Ronald Booker was found guilty of violating R.C. 2925.03(A):
 No person shall knowingly sell or offer to sell a controlled substance.
The evidence presented at trial by the State, if believed, clearly demonstrates that Ronald Booker sold Det. Barnett crack cocaine while Barnett was conducting an undercover investigation of drug activity at the Whitney Young Estates apartment complex in Dayton, Ohio. The conflict in the evidence was created by Booker's testimony that he was not present at that apartment complex on the night in question, and he did not sell cocaine to Det. Barnett. Witness credibility, and the weight to be given to each witness' testimony, are matters for the trier of fact to resolve. State v. DeHass (1967), 10 Ohio St.2d 230.
In this case, we certainly cannot say that the jury lost its way simply because it chose to believe Det. Barnett instead of Ronald Booker. In reviewing this entire record we also cannot say that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has resulted. Booker's conviction is not against the manifest weight of the evidence.
Booker's fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and WOLFF, J. concur.
Copies mailed to:
Johnna M. Shia, Esq.
Alan D. Gabel, Esq.
Hon. David A. Gowdown