[Cite as *State v. Milby*, 2020-Ohio-5569.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-06-068 |
| | : | O P I N I O N |
| - vs - | | 12/7/2020 |
| | : | |
| JASON W. MILBY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34562

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Jeffrey W. Stueve, 530 North Broadway Street, Lebanon, Ohio 45036, for appellant

Joshua G. Burns, 500 Justice Drive, Lebanon, Ohio 45036, for appellant

**RINGLAND, J.**

{¶1}   Jason Milby appeals from his convictions for murder in the Warren County Common Pleas Court.  For the reasons discussed below, this court affirms Milby's convictions.

{¶2}   In 2011, the state charged Milby with felonious assault and child endangering

after two-year-old Bryce Shannon sustained a severe brain injury while under Milby's care.[1] That brain injury left Bryce in a permanent vegetative state. At Milby's trial, multiple medical experts opined that Bryce's brain injury was the result of abusive head trauma. The jury convicted Milby as charged and the court sentenced him to eight years in prison. Milby appealed to this court, which affirmed his conviction. *State v. Milby*, 12th Dist. Warren No. CA2013-02-014, 2013-Ohio-4331.

{¶3} Bryce died in May 2016. An autopsy revealed that the immediate cause of death was pneumonia due to complications resulting from the brain injury. The state subsequently indicted Milby on two counts of murder under R.C. 2903.02(B). The indictments charged Milby with causing the death of another, as the proximate result of committing an offense of violence, specifically, the offenses of felonious assault and child endangering of which he had been previously convicted (referred to collectively as the "predicate offenses").

{¶4} At trial, the state presented exhibits consisting of certified copies of court records related to Milby's earlier convictions for the predicate offenses, including the indictment, bill of particulars, verdict forms signed by the jurors, and judgment entry of sentence. The bill of particulars indicated that the state alleged that on or about July 14, 2011, between approximately 6:30 p.m. and 9:30 p.m., Milby had caused serious physical harm and recklessly abused Bryce by inflicting a traumatic brain injury.

{¶5} Bryce's mother, Collette, testified about the struggle of keeping Bryce alive and well-cared for in the years following the brain injury. Following the brain injury, Bryce was never able to see, feed himself, talk, or walk. He was a quadriplegic. He suffered various ailments related to his permanent vegetative state, including seizures, scoliosis,

---

1. Milby was in a relationship with Bryce's mother, Collette Shannon, and had been left alone babysitting Bryce and Bryce's siblings.

repeated bouts of pneumonia, and sepsis. He was hospitalized multiple times, sometimes for months at a time.

{¶6} On May 24, 2016, Collette noted Bryce's breathing began to sound "very dry." Collette called Bryce's respiratory therapist, who said she would prepare a "bubbler" device. Collette then left Bryce with Bryce's grandmother and left to retrieve the bubbler. She returned 25 minutes later and installed the bubbler. Subsequently, Bryce's vital monitors began to alarm. Collette saw that Bryce was not breathing and began CPR. She told her daughter to call 9-1-1. Bryce never responded to the resuscitative efforts of Collette or the first responders.

{¶7} Dr. Bryon Casto is a forensic pathologist and testified about performing Bryce's autopsy. Dr. Casto believed that Bryce appeared well-cared for based on the condition of his body. Dr. Casto found that Bryce's lungs were "involved in widespread pneumonia." Dr. Casto indicated that there was a link between Bryce's physical condition of being in a bedfast state and pneumonia. This is because someone who is mobile and also has the ability to clear his or her airway has a better ability to avoid respiratory illnesses. Bryce's scoliosis, which could also be caused by his bedfast state, would also have contributed to his pneumonia. Ultimately, Dr. Casto opined, within a reasonable degree of medical certainty, that Bryce's death was the result of lobar pneumonia due to complications of remote traumatic brain injury.

{¶8} On cross-examination, Milby's defense counsel asked whether Dr. Casto had determined Bryce's manner of death. Over the state's objection, which was premised on an earlier agreement between the parties not to present expert testimony concerning the predicates offenses, Dr. Casto testified that Bryce's manner of death was "undetermined." Dr. Casto explained that, based on the autopsy and other information he had reviewed, he could not rule out that Bryce's original brain injury was not an accident. On redirect, Dr.

Casto confirmed that he had not treated Bryce in 2011 and clarified that it was not his opinion that Bryce's original injury was accidental.

{¶9} Dr. Randall Alexander is a professor of pediatrics at the University of Florida and testified as an expert in pediatrics and child abuse, including abusive head trauma. He had been involved as a consultant in the case since 2012, when he diagnosed Bryce with abusive head trauma. Dr. Alexander opined that Bryce's initial injury on July 14, 2011, was the proximate cause of his death in 2016.

{¶10} Milby took the stand in his defense case. He testified that he was watching Bryce as well as Collette's other children, and that they were all outside playing. He picked up Bryce and playfully tossed him in the air. As Bryce was in the air, Milby's foot slipped and then both he and Bryce fell onto concrete. Afterwards, Bryce cried for a short time. But within a few minutes, they went inside to get something to eat. They ate nachos. Then Bryce went into his room and played with cars and dinosaurs. Milby went back and forth checking on the children outside and checking on Bryce inside.

{¶11} At one point, Milby watched as Bryce jump off a dresser onto the bed. Milby told him to get down. Milby later went to check on Bryce and saw that he was "napping" on the floor, "hunched over like with his butt in the air." Milby was concerned but left Bryce "napping" and continued going back and forth checking on the other children. At some point, he observed that Bryce had vomited on the floor. He put Bryce on a couch, and then moved him to the floor again, where Bryce again vomited.

{¶12} Milby said he began texting Collette with his concerns, and she told him to call Bryce's grandmother for assistance. When Bryce's grandmother arrived, she realized that Bryce was "not awake" and was "doing nothing" and that they needed to call 9-1-1. Then she decided she would take Bryce herself to urgent care.

{¶13} On cross-examination, Milby confirmed that he had never told this story to the

police and admitted that he had earlier lied to police. The state also confronted Milby with a pro se motion for judicial release that he filed in 2015. In it, Milby expressed remorse to the sentencing judge. Milby denied writing the motion and stated that he paid another inmate to write the motion for him.

{¶14} The state called Dr. Alexander to rebut Milby's testimony about the accidental fall. After the prosecutor relayed Milby's version of events, Dr. Alexander indicated that it did not change his opinion. Dr. Alexander further indicated that Milby's version of events was not consistent with the serious brain injury Bryce suffered. The jury found Milby guilty of both counts of murder. Milby appeals and raises four assignment of error.

{¶15} Assignment of Error No. 1:

{¶16} THE TRIAL COURT VIOLATED THE APPELLANT'S CONSTITUTIONAL DUE PROCESS RIGHTS.

{¶17} Milby argues that the court violated his right to a fair trial by denying him funds to hire an expert who could present evidence that Bryce's brain injury was the result of an accident. Milby argues that the court denied him funds for an expert based upon the state's representation that it would not present expert medical testimony "regarding the underlying felony offenses." However, Milby argues that the state did present such expert testimony. Milby further argues that because he was denied access to an expert, his defense counsel was unable to effectively cross-examine the state's expert witnesses.

{¶18} The record reflects that prior to the trial, the prosecutor e-mailed defense counsel and the court, asking for guidance as to whether there would be a need to call the medical experts who treated Bryce in 2011 and who testified at the trial of the predicate offenses. The prosecutor indicated his understanding that the state was not required to retry and prove the predicate offenses but wanted to confirm if that was so and whether he could release those witnesses from subpoena. Defense counsel responded that he did not

intend to present any "counter evidence regarding the original assault" and that the defense had no experts to dispute the original incident but that Milby was reserving his right to testify and deny that the assault occurred.

{¶19} Later, the court responded to the state's question on whether it would have to retry the predicate offenses. The court indicated that the state could not use principles of collateral estoppel to establish the previous offenses, but would instead need to present sufficient evidence to prove the fact of the prior convictions, such as through certified copies of the indictment, bill of particulars, verdict forms, and judgment entry of conviction. The court additionally noted that Milby would have the ability to contest the claim that he committed the acts of which he was convicted.

{¶20} Subsequently, and with approximately 20 days remaining to the trial date, Milby moved the court to continue the trial and provide him state funds to hire an expert witness "to contest the State's evidence that he committed the underlying assault in this matter." Following an in-chambers meeting, the court denied this motion. In that decision, the court indicated that during the in-chambers meeting the state had represented that it would not present expert testimony concerning the predicate offenses.

{¶21} At trial, during defense counsel's cross-examination of Dr. Casto, counsel asked Dr. Casto whether he had an opinion as to Bryce's manner of death. The state objected. A sidebar discussion ensued, and the state indicated that based upon the court's earlier ruling, the state had only intended to call Dr. Casto to testify to Bryce's cause of death. The defense then explained that they intended to question Dr. Casto concerning a portion of his written autopsy report in which he stated that he could not rule out an "accidental mechanism" for Bryce's original brain injury.

{¶22} In response, the state argued that if Milby wanted to present this evidence to the jury, it would open the door to contrary expert evidence demonstrating that the original

brain injury was nonaccidental. Ultimately, the court overruled the state's objection and allowed Milby's counsel to proceed with the intended line of questioning. Dr. Casto then confirmed that, based on the autopsy he performed and the information he had reviewed, he was unable to rule out an accidental mechanism for the original injury and therefore, in his opinion, Bryce's manner of death was undetermined.

{¶23} Later in the trial, and prior to Dr. Alexander's testimony, the state discussed its plans with opposing counsel and the court with regard to Dr. Alexander's direct examination. The state indicated that in light of Dr. Casto's testimony, the state would question Dr. Alexander as to potential accidental explanations for Bryce's brain injury and why Dr. Alexander was able to rule out those explanations. Milby's counsel objected, but the court indicated that it would withhold any ruling until the objection was presented during testimony. Later, and over Milby's objection, Dr. Alexander testified that he found no accidental causes to account for the trauma inflicted on Bryce's brain.

{¶24} The decision to grant, set, or deny an indigent defendant's request for funds to employ an expert witness is within the discretion of the trial court. *State v. Peeples*, 94 Ohio App.3d 34, 39 (4th Dist.1994). Therefore, this court reviews for an abuse of discretion, which implies that the court's decision was unreasonable, arbitrary, or unconscionable. *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 35.

{¶25} For purposes of due process, neither the United States Constitution nor the Ohio Constitution require the government to provide expert assistance to an indigent defendant. *State v. Mason*, 82 Ohio St.3d 144, 150 (1998). In order to establish a due process violation, "a defendant must show more than a mere possibility of assistance from an expert." *Id.* Rather, a defendant must make "a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." *Id.*

{¶26} This court does not find that Milby met his burden of making a particularized showing that an expert would aid in his defense, that an expert was reasonably necessary to present a defense, or that the denial of expert assistance resulted in an unfair trial. Milby speculates that he could locate an expert witness to bolster his claim that the brain injury suffered by Bryce was accidental. However, Milby's speculation alone does not establish a reasonable probability. "'[U]ndeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate.'" *State v. Gumm*, 73 Ohio St.3d 413, 427 (1995), quoting *State v. Scott*, 41 Ohio App.3d 313 (8th Dist.1987). Moreover, given that the state presented unrefuted documentary and testimonial evidence that a jury convicted Milby of the predicate offenses, Milby cannot show a *reasonable* probability that hypothetical, contrary expert testimony as to the cause of the original injury would have aided in his defense at this trial.

{¶27} Moreover, it appears that Milby's need for his own medical expert was based upon his decision to disregard the state's agreement that no expert medical testimony would be presented concerning causation of the predicate offenses. Instead, Milby chose to present an expert opinion that the original injury to Bryce's brain could have been accidental. This made the matter of accidental versus nonaccidental cause a contested issue at trial and opened the door to contrary causation evidence.

{¶28} This court also finds no merit in the argument that Milby's defense attorneys were limited in their ability to cross-examine the state's witnesses because of Milby's inability to secure an expert witness at the state's expense. Milby's counsel vigorously cross-examined both of the state's expert witnesses and was able to obtain evidence favorable to Milby through the cross-examination of Dr. Casto.

{¶29} Milby cites *State v. Sellers*, 8th Dist. Cuyahoga No. 85611, 2005-Ohio-6010, for a factually similar case where the appeals court concluded that it was an abuse of

discretion for the trial court to deny a request for funds to hire an expert witness. There, the victim died eight years after being assaulted by the defendant, an assault that left the victim in a vegetative state. *Id.* at ¶ 2. The defendant moved the court to appoint an expert witness to determine cause of death, a motion the court denied. *Id.* In reversing, the court of appeals held that defendant had presented a "developed" assertion of his need for expert testimony, because causation was the only issue in the case and the court's denial of expert testimony led the defendant to plead no contest in lieu of going to trial. *Id.* at ¶ 20.

{¶30} Unlike *Sellers*, Milby did not request funds for expert assistance in challenging the state's medical evidence that Bryce's death was the proximate result of the original injury. At trial, Milby effectively conceded this issue. Instead, Milby requested funds to present medical expert testimony challenging causation with regard to Bryce's original brain injury, for which he was previously tried and convicted in a separate jury trial, and for which the state presented unrefuted evidence. Milby also did not present a "developed" argument establishing his need for a medical expert. "[A] generalized assertion does not qualify as the 'particularized showing' required by *Mason* * * *." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 66. Milby's motion for expert funds merely indicated that the funds would be used to "contest the State's evidence that he committed the underlying assault in this matter." Accordingly, this court does not find that *Sellers* suggests a different result and concludes that Milby has not demonstrated that the trial court's decision was unreasonably, arbitrary, or unconscionable. This court overrules Milby's first assignment of error.

{¶31} Assignment of Error No. 2:

{¶32} THE APPELLANT'S CONVICTION IS A VIOLATION OF THE DOUBLE JEOPARDY CLAUSE.

{¶33} Milby argues that the predicate offenses were lesser included offenses of the

two counts of murder, and that because the state failed to reserve the right to later indict him for murder, his subsequent murder convictions arising out of the same acts violated his rights under the Double Jeopardy Clause. "The Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes unless each statute 'requires proof of a fact which the other does not.'" *State v. Tolbert*, 60 Ohio St. 3d 89, 90 (1991), quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180 (1932). Furthermore, "the Double Jeopardy Clause prohibits prosecution of a defendant for a greater offense when he or she has already been acquitted or convicted on the lesser included offense." *Id.* citing *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221 (1977).

{¶34} However, the Ohio Supreme Court has noted an exception "where the state is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." *Id.* at paragraph two of the syllabus. In so holding, the court recognized an exception to a double jeopardy statute by holding that a defendant's conviction of assault and battery did not prevent a subsequent prosecution for homicide after the death of the victim. *Id.* at 91, citing *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250 (1912). Accordingly, because Bryce was not deceased at the time of Milby's initial indictment and later convictions for the predicate offenses, Milby's subsequent convictions for murder would not violate his rights under the Double Jeopardy Clause.

{¶35} Milby cites *State v. Carpenter*, 68 Ohio St.3d 59 (1993), for the argument that the state was required to reserve the right to later charge him with murder. In *Carpenter*, the court held that "[t]he state cannot indict a defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the state expressly reserves the right to file additional charges

on the record at the time of the defendant's plea." *Id.* at syllabus.

{¶36} Milby acknowledges that *Carpenter* involved a negotiated guilty plea, but urges this court to expand the rule in *Carpenter* to cases involving jury trials because it would provide finality and preserve a defendant's expectation that he or she will not be held accountable for further charges based on the same alleged actions. This court declines that invitation. *Carpenter* was expressly limited to plea agreements, and the Ohio Supreme Court made clear that the requirement of reserving the right to bring additional charges was to protect plea agreements, which "are an essential and necessary part of the administration of justice." *Id.* at 61. Here, there is no strong public policy argument for extending the rule to provide finality to a criminal defendant whose victim survives an initial assault only to later die. Public policy dictates that a defendant who violently assaults another individual such that death could be a foreseeable result should anticipate being tried for murder if the victim dies. This court overrules Milby's second assignment of error.

{¶37} Assignment of Error No. 3:

{¶38} THE TRIAL COURT VIOLATED THE APPELLANT'S DUE PROCESS RIGHTS BY ADMITTING IRRELEVANT AND PREJUDICIAL EVIDENCE.

{¶39} Milby contends that the court erred in admitting statements he made in his pro se motion for judicial release. In the statement, Milby expressed regret to the sentencing judge for his actions and blamed his trial attorney for advising him to remain silent. Milby further wrote:

> I wanted the court to know I accept fully, my actions of the day this crime was committed, I am often left to ask myself "What kind of man would commit the crime I committed that day?" Taking a program called "Roots for Success" has shown me that thinking things through before I act and not reacting to life so quickly would have allowed me the ability to avoid this time in prison altogether.

{¶40} Milby argues that his statement should have been excluded under Evid.R. 403

because it was unfairly prejudicial. Milby contends that the statute governing judicial release requires a finding of remorse on behalf of the defendant, thus, he argues that he was required to express remorse in his application. Milby further contends that, as a matter of public policy, statements of remorse expressed in a motion for judicial release should not be admissible evidence in a subsequent criminal trial.

{¶41} Milby did not object to the admission of his statement. Under Crim.R. 52(B), this court will only conduct a review for plain error. To constitute plain error, there must be an obvious deviation from a legal rule that affected Milby's substantial rights, that is, the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23.

{¶42} This court does not find plain error. The statement was relevant as it tended to inculpate Milby in having committed the predicate offenses. Furthermore, the statement was admissible as non-hearsay, i.e., it was admissible as an admission by a party-opponent. Evid.R. 801(D)(2). Finally, the probative value of the statement was not outweighed by the danger of it being unfairly prejudicial. Simply because the statement would tend to inculpate Milby does not make it unfairly prejudicial. Milby voluntarily submitted the statement to the sentencing judge with no assurance that it would remain confidential. And there is nothing in the statement that would tend to incite or distract jurors from deciding the case based upon the facts. This court overrules Milby's third assignment of error.

{¶43} Assignment of Error No. 4:

{¶44} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS AND THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE

EVIDENCE.

{¶45} Milby argues that the state failed to submit sufficient evidence to permit guilty verdicts and that his convictions were otherwise not supported by the weight of the evidence. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶46} A manifest weight challenge scrutinizes the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶47} The state charged Milby with two counts of murder under R.C. 2903.02(B), which provides, in relevant part, that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree* * *." Milby alleges that the state failed to submit sufficient evidence that he committed the predicate offenses. Milby argues that the only evidence of his guilt of the predicate offenses were the certified copies of the indictments, bill of particulars, verdict forms, and judgment entries of sentence, as well as some

statements by the expert witnesses referring to his earlier convictions for the predicate offenses.

{¶48} This court finds that the state submitted sufficient evidence to allow a rational trier of fact to find, beyond a reasonable doubt, that Milby was guilty of both counts of murder. Through the testimony of an investigating detective, the state introduced into evidence certified copies of Milby's earlier convictions for felonious assault and child endangering. Those documents reflected that the offense occurred on July 14, 2011, that the victim was Bryce, that the charges were felonies of the second degree, and that Milby was duly convicted and sentenced for those crimes.

{¶49} Milby did not object to the admission of the certified records and presented no evidence challenging the fact of his convictions for the predicate offenses. In fact, Milby admitted in his testimony that he had been convicted of the predicate offenses. This court does not agree with Milby's suggestion, for which he cites no legal authority, that the state could not demonstrate the fact of the predicate offenses through the use of certified copies of court records.

{¶50} Where a prior conviction is an element of an offense, the Revised Code provides that "a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B)(1). Thus, if a prior conviction can be proven exclusively, and beyond a reasonable doubt, through certified records, then it is logical that the fact that Milby committed the offenses of felonious assault and child endangering could be demonstrated by certified court records admitted into evidence.

{¶51} The state also presented evidence causally tying the predicate offenses to Bryce's death in May 2016. Dr. Casto opined that Bryce's death was from lobar pneumonia

due to complications resulting from a remote traumatic brain injury. And Dr. Alexander opined that the initial trauma to Bryce's brain in 2011 was the proximate cause of his death. The evidence also indicated that Bryce was well-cared for in the years following his injury and that there were no intervening medical causes contributing to his death.

{¶52} For the same reasons, this court concludes that Milby's conviction was supported by the greater weight of the evidence. The only contradictory evidence presented was Milby's testimony regarding an alleged accidental drop, after which Bryce ate food and played with toys until eventually falling unconscious. However, Milby's testimony was contradicted by the expert medical evidence indicating that the injury to Bryce's brain was so severe, he would have been incapable of engaging in any of the activities claimed by Milby. The jury did not lose its way and this court overrules Milby's fourth assignment of error.

{¶53} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.