GERTSMA et al., Appellants,

v.

CITY OF BEREA, Appellee.

[Cite as *Gertsma v. Berea* (1999), 135 Ohio App.3d 655.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74063.

Decided Nov. 1, 1999.

*Michael R. Gareau* and *James M. Dubelko, Gareau & Dubelko,* for appellants.

*Phillip A. Ciano, John A. Demer* and *Gregory M. Sponseller,* for appellee.

PATTON, Judge.

Plaintiffs Laurence and Mildred Gertsma, landlords of two separate eight-unit apartment buildings in Berea, brought this declaratory judgment action against

the city of Berea, challenging the constitutionality of Berea Codified Ordinance No. 90–117. That ordinance requires owners of commercial buildings and apartment buildings with more than four units to arrange for and pay for private trash collection. Plaintiffs claimed that the ordinance violated their rights to equal protection under the law; the city claimed that the ordinance was a legitimate cost-cutting effort. Both sides filed motions for summary judgment. Employing the rational-basis test, the court found the ordinance rationally related to the city's goal of easing the rising costs of garbage collection and countering the depletion of landfill availability. The court stated, "[T]he distinctions drawn in the ordinance are rational and establish reasonable means of furthering legitimate government ends." This appeal challenges that ruling.

The cross-motions for summary judgment establish that most of the material facts of this case are undisputed. Section 321.02 of the Berea Codified Ordinances creates three classifications for the collection of refuse: (1) one-, two-, three-, and four-family residential structures maintained as single-family residences not exceeding four units, including townhouses; (2) multifamily residential structures maintained as apartment houses, motels, hotels, and boarding houses in excess of four residential units; and (3) commercial structures maintained for the carrying on of commerce of any kind, either wholesale or retail. The ordinances require trash collection according to these classifications. Section 321.04 of the Berea Codified Ordinances states:

"(a) *Low–Density Residential, and Condominium Units:* The City will provide refuse pickup service for one, two [sic] three and four-family residences and for multi-family condominium units * * *.

"(b) *Medium to High Density Residential:* The city will not provide for refuse collection from medium to high density residences. These include all residential structures having more than four dwelling units, except multi-family condominium units."

Affidavits submitted by the mayor and the city safety service director show that the city had concerns about its solid waste disposal, so in 1988 the mayor appointed a citizen committee to address these concerns. The committee reported that landfill costs would continue to increase and recommend that the city take steps to decrease the amount of waste it hauled to the landfill. The committee primarily recommended that the city establish a recycling program, and devoted roughly half of its report to recommendations to the mayor on how best to implement the program. The committee also stated, "Terminating the free hauling of commercial wastes by the City of Berea" would be one method to reduce the amount of waste hauled.

The safety service director stated that there were twenty-one multifamily apartment buildings containing more than four dwelling units in the city; that

these twenty-one multifamily apartment buildings contained nine hundred ninety-four units; and that for 1996, it would have cost the city an additional $102,630 to provide garbage collection to these buildings. Moreover, the safety service director stated that were the city required to provide garbage collection to these twenty-one multifamily apartment buildings, the city would need to purchase additional equipment at a cost of $188,500.

Plaintiffs alleged that as of April 1997, they had incurred a total of $10,198.68 in private garbage-collection fees, and were currently paying $158.42 monthly in collection fees.

I

The first assignment of error complains that Berea Codified Ordinance No. 90-117 violates plaintiffs' right to equal protection under the law because it makes an arbitrary distinction between multifamily apartment buildings with more than four units and condominium units that have more than four units and is not rationally related to the legitimate governmental objectives.

Defendant raises an equal protection argument under both the United States Constitution and the Ohio Constitution. The Fourteenth Amendment to the United States Constitution provides, "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Section 2, Article I of the Ohio Constitution provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The Supreme Court has held that these two provisions are functionally equivalent. *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1998), 83 Ohio St.3d 229, 233, 699 N.E.2d 463, reversed on other grounds, (1999) 526 U.S. 124, 119 S.Ct. 1162, 143 L.Ed.2d 227; *State v. Buckley* (1968), 16 Ohio St.2d 128, 45 O.O.2d 469, 243 N.E.2d 66.

The standard of appellate review for equal protection arguments depends on the nature of the rights allegedly violated by the government. It is only when classifications are made on suspect classes of persons or place burdens upon the exercise of fundamental rights that courts depart from traditional equal protection principles. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 561, 664 N.E.2d 926, 929; *Cleburne, Tex. v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–3255, 87 L.Ed.2d 313, 320–321. When, as here, the parties agree that the challenged legislation does not affect a fundamental right and does not create a suspect class, our review is limited to determining whether the distinctions drawn in the ordinance bear some rational relationship to a legitimate governmental objective. *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 910–911, citing *Clements v. Fashing* (1982), 457

U.S. 957, 963, 102 S.Ct. 2836, 2843–2844, 73 L.Ed.2d 508, 515–516. The rational-basis test says that legislative distinctions are invalid only if they bear no relation to the state's goals and no ground can be conceived to justify them. *State v. Thompkins*, 75 Ohio St.3d at 560, 664 N.E.2d at 928; *Cincinnati City School Dist. Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 376, 12 O.O.3d 327, 331–332, 390 N.E.2d 813, 819; *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 119, 11 O.O.3d 290, 293, 387 N.E.2d 231, 234.

██ Ohio cities are authorized to regulate local sanitation. *Portsmouth v. McGraw* (1986), 21 Ohio St.3d 117, 119, 21 OBR 422, 423–424, 488 N.E.2d 472, 473–474. Section 1 of the preamble to the 1990 amendments to Berea Codified Ordinances, Section 321 *et seq.*, states that the "collection, disposal and handling [of residential garbage and rubbish] presents the potential for harm to our environment, and presents issues of serious concern to the City relative to cost and should be regulated by law." This statement by the city suffices to demonstrate that the city's desire to regulate the cost of garbage collection is a legitimate governmental objective.

██ The sole question for us is whether the ordinance is rationally related to the governmental objective of containing garbage collection costs. "As a practical matter, the rational basis test requires that a legislative classification, albeit imperfect or discriminatory, will not be set aside if any set of facts reasonably may be conceived to justify it." *Evans v. Chapman* (1986), 28 Ohio St.3d 132, 135, 28 OBR 228, 231, 502 N.E.2d 1012, 1015, citing *McGowan v. Maryland* (1961), 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1104–1105, 6 L.Ed.2d 393, 398–399. The deference afforded legislative action is so broad that we end our review if the legislation is merely plausible, even if that plausibility arises from reasons that were not considered by the legislature. *United States RR. Retirement Bd. v. Fritz* (1980), 449 U.S. 166, 179, 101 S.Ct. 453, 461–462, 66 L.Ed.2d 368, 378–379. When economic or social welfare issues are concerned, even illogical and unscientific approximations by the legislature may suffice. *Dandridge v. Williams* (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–1162, 25 L.Ed.2d 491, 501–502.

The city offers four possible bases that justify the ordinance, and plaintiffs vigorously dispute them in a detailed argument, but the extremely broad standard of review under the rational-basis test does not require us to examine all of the reasons and arguments to determine their validity. We find that the city's desire to cut the costs of garbage collection is a sufficient basis for distinguishing between apartments with more than four units. See *Beauclerc Lakes Condominium Assn. v. Jacksonville* (C.A.11, 1997), 115 F.3d 934. We accept as rational the city's position that apartments with more than four units are commercial enterprises, even more so than apartments with four or fewer units. The city's unrebutted evidence showed significant cost savings from the ordinance, and its

claim that the economies of scale for larger apartments gives them greater bargaining power to negotiate favorable garbage collection fees through private trash haulers is plausible. The city's decision to draw the line of demarcation at apartments with more than four units is not wholly arbitrary, for distinctions of some kind must be drawn in statutes or ordinances. In *McGowan v. Maryland* (1961), 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399, the Supreme Court stated, "State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." In *Beauclerc Lakes Condominium Assn.*, 115 F.3d at 935–936, the court stated:

"A government is not required to provide sanitation service to all or none; the Equal Protection Clause does not always preclude a legislature from treating some of its citizens differently from others. A government's line-drawing need not be accomplished with mathematical precision—rough accommodations are tolerated even if some equality results." (Citation omitted.)

■ Plaintiffs complain that the city's decision to exclude condominiums, regardless of the number of units, from the ordinance is wholly · arbitrary. Although the ordinance does not give the city's reasons for doing so, it could be surmised that larger apartment buildings have a more commercial aspect than condominiums. A condominium is a form of cooperative ownership whereby each unit owner possesses an interest in the common areas of the condominium complex. See *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 279, 617 N.E.2d 1075, 1079–1080, citing Blackburn & Melia, Ohio Condominium Law Reform: A Comparative Critique (1978), 29 Case W.Res.L.Rev. 145, 147–149. While there are economic reasons why condominium owners would choose to band together as a cooperative unit, those reasons are not generally profit-oriented. In contrast, the landlord of an apartment building is, like other commercial entities excluded by the ordinance, in business to make money. As previously noted, the economies of scale for larger apartment buildings may help offset some of the cost associated with arranging and paying for private garbage collection. This is a rational reason for distinguishing between condominiums and apartments with more than four units.

Plaintiffs cite *Royal Am. Corp. v. Euclid* (Aug. 21, 1975), Cuyahoga App. No. 34018, unreported, as support for their argument that the ordinance bears no rational relationship to a legitimate governmental interest. In *Royal Am.*, we considered a very similar ordinance adopted by the city of Euclid, which provided, "The City will not collect any solid waste materials from (1) any apartment or condominium structures or (2) any commercial structures in the City of Euclid." We invalidated the ordinance as being so arbitrary as to offend equal protection:

"Euclid Ordinance 49–1974 places apartments in one category and single-family and two-family dwellings in another. The classification is based upon the nature of the buildings involved, the volume of garbage produced in each, and the cost of collection of such garbage. The classification does not take cognizance of the fact that people in apartments and people in single- or two-family dwellings produce the same type of refuse. Citizens living in both types of residences require the removal of their garbage and rubbish on a regular basis for health and safety reasons. There is no rational basis for the municipal decision not to collect garbage from inhabitants of apartments on the one hand and to collect it from inhabitants of residential dwellings on the other. Thus, Ordinance 49–1974 contravenes the principle of equal protection." (Citation omitted.) *Id.*, at 6.

The equal protection argument in *Royal Am.* has no precedential value because the court's discussion is dicta. In the first assignment of error considered by the *Royal Am.* court, it sustained an argument that the trial court erred by failing to draft findings of fact and conclusions of law as requested by the appellants. The legal effect of the trial court's failure to issue findings of fact and conclusions of law pursuant to Civ.R. 52 was to toll the time for filing a notice of appeal. In *Walker v. Doup* (1988), 36 Ohio St.3d 229, 522 N.E.2d 1072, the syllabus states, "When a timely motion for findings of fact and conclusions of law has been filed in accordance with Civ.R. 52, the time period for filing a notice of appeal does not commence to run until the trial court files its findings of fact and conclusions of law." See, also, *Caudill v. Caudill* (1991), 71 Ohio App.3d 564, 594 N.E.2d 1096. Admittedly, the Supreme Court did not issue the *Walker* decision until years after our decision in *Royal Am.;* nevertheless, the *Royal Am.* court's failure to issue findings of fact and conclusions of law was *jurisdictional*—and anything the court stated relating to the constitutionality of Euclid ordinance was pure dicta.

Since there is no material issue of fact present, we find as a matter of law that an economic basis exists for the city's decision to cease garbage collection for apartment units with more than four units. We overrule the first assignment of error.

## II

The second assignment of error complains that the court erred by failing to strike parts of the affidavits of the mayor and the safety service director on grounds that certain matters averred to in the affidavits were not made on personal knowledge and would not have been admissible at trial.

Plaintiffs make the following complaints: (1) the service safety director could not competently testify to the reasons underlying the city council's determination that a distinction exists between residential and commercial use, (2) the service safety director could not competently testify to the reasons why the city council

adopted the ordinance, and (3) the mayor could not state in an affidavit that the ordinance related to the city's legitimate interests in promoting home ownership, cost containment, and reduction of landfill space.

Even were we to agree with plaintiffs and assume for the sake of argument that none of the three statements were made upon personal knowledge, striking those statements would not require us to reverse the court's decision. The standard of review we articulated for the rational-basis test is so broad that we must uphold the legislation even if we find plausible reasons that were not considered by city council. *United States RR. Retirement Bd. v. Fritz, supra.* In other words, we could independently find a difference between apartments and condominiums, and uphold the legislation on that ground, even if the city council did not consider that as a valid reason in the first place. Hence, the affidavits would have no effect on our decision, and any error in failing to strike the affidavits would have been harmless beyond a reasonable doubt.

In any event, even if were we to consider the merits of this argument, we would find all the statements contained in these affidavits were made with personal knowledge. Civ.R. 56(E) states, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Statements contained in affidavits must be based on personal knowledge and cannot be legal conclusions. *State v. Licsak* (1974), 41 Ohio App.2d 165, 169, 70 O.O.2d 325, 327–328, 324 N.E.2d 589, 593. " 'Personal knowledge' is defined as: '[k]nowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' " *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 756, 603 N.E.2d 1049, 1054, quoting Black's Law Dictionary (6 Ed.1990) 873.

Beginning first with the service safety director's affidavit, he stated that the city council passed the ordinance based upon its determination that "a distinction exists between a residential and a commercial use." We find that this statement was made upon personal knowledge. Plaintiffs argue that the service safety director could not testify to the motivations of city council—only city council could do so. Yet the record suggests that the service safety director attended city council meetings so he could testify to his recollection of what occurred at those meetings. The safety service director could likewise state his recollection of why city council passed the ordinance because his presence at city council meetings gave him some exposure to the legislative proceedings.

As to the mayor's statement that the ordinance was intended to promote home ownership, among other things, we find that this statement was made on personal knowledge. The mayor formed the citizens committee to examine

garbage collection within the city and advise on measures that could be employed to contain costs. As the mayor, he is entitled to suggest legislation, as he clearly did in this case. We do agree that the mayor's statement that the ordinance "relates to the City of Berea's legitimate interests in promoting home ownership" is more of a legal conclusion than a statement of fact, but other statements in the mayor's affidavit, made with apparent personal knowledge, sufficiently demonstrate the city's motivations in passing the ordinance. The second assignment of error is overruled.

*Judgment affirmed.*

MICHAEL J. CORRIGAN, J., concurs.

TIMOTHY E. MCMONAGLE, P.J., dissents.

TIMOTHY E. MCMONAGLE, Presiding Judge, dissenting.

I am compelled to dissent respectfully from the majority in this case:

I dissent from the majority's decision overruling appellants' second assignment of error. The majority states that "the record suggests the service safety director attended city council meetings." Nevertheless, the affidavit of the service safety director does not lay any foundation for his assertions regarding the motivation of council for passing Ordinance No. 90–117. Absent such a foundation, I cannot conclude that these assertions were "made on personal knowledge" as required by Civ.R. 56(E).

I do agree with the majority that the affidavit of the mayor contains a legal conclusion, *i.e.,* that Ordinance No. 90–117 promotes home ownership. As a consequence, I would hold that the trial court erred in denying appellants' motion to strike portions of the affidavits accompanying appellee's motion for summary judgment and would sustain the second assignment of error.

Likewise, I would sustain the first assignment of error and hold that Ordinance No. 90–117 violates the Equal Protection Clauses of the Ohio and United States Constitutions.

Under Ordinance No. 90–117, the city does *not* provide refuse pickup service to residential structures having more than four dwelling units, except multifamily condominium units. Among those excluded from refuse pickup service by the city are apartment buildings having more than four dwelling units.

Correctly, the majority recognizes that the constitutional challenge presented in this case must be evaluated in light of the rational-basis test in order to determine "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Communications Comm. v. Beach*

*Communications, Inc.* (1993), 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221. Despite the "strong presumption of validity," *id.* at 314, 113 S.Ct. at 2102, 124 L.Ed.2d at 222, and deference accorded legislation under the rational-basis test, I would hold that the classification established by Ordinance No. 90–117 is constitutionally flawed.

All of the purported bases for this legislation espoused by appellee fail the rational-basis test. For example, although appellee's goal of protecting the environment is laudable, appellee has not demonstrated any rational basis for concluding that requiring apartment buildings having more than four dwelling units to arrange for private refuse collection affects the environment any differently than municipal collection would.

Likewise, a city may not alleviate the rising costs of garbage collection by creating an arbitrary classification. Twenty-one apartment buildings containing nine hundred ninety-four units are denied refuse collection under Ordinance No. 90–117. Ordinance No. 90–117 does authorize refuse collection for the three condominium complexes in Berea containing one hundred forty-six units. The average size of the apartment buildings is slightly more than forty-six units. The average size of the condominium complexes is slightly less than forty-nine units.

Certainly, excluding the twenty-one apartment buildings would reduce the city's overall cost of refuse collection. Merely reducing total costs of the city does not, however, establish a rational basis for the classification. Rather, the classification discriminates on a basis unrelated to refuse collection, *i.e.*, the classification turns solely on the nature of ownership of the property.

Appellee also argues that Ordinance 90–117 rationally relates to the objective of promoting home ownership. As noted above in the discussion of the second assignment of error, the assertion in the mayor's affidavit that the ordinance promotes home ownership is a legal conclusion and should have been stricken by the trial court. Furthermore, this argument by appellee demonstrates the inherent irrationality of Ordinance No. 90–117. That is, if promoting home ownership were a goal of appellee, the city would not provide refuse pickup to any rental units. Under Ordinance No. 90–117, however, buildings with four or fewer dwelling units have the benefit of the city's refuse pickup regardless of the nature of ownership. In any event, if home ownership were the objective, the city would provide refuse pickup exclusively to owner-occupied buildings.

Appellee's argument that Ordinance 90–117 draws a rational distinction between larger and smaller apartments ignores the essential flaw in this legislation. That is, appellee's line-drawing is not limited to the number of units but blurs lines by creating two classes of residential structures having more than four dwelling units. Appellee would withhold a service from apartment dwellers that

is provided to condominium dwellers without demonstrating any rational basis pertaining to refuse collection for creating these two classes of residents.

This court's decision in *Royal Am. Corp. v. Euclid* (Aug. 21, 1975), Cuyahoga App. No. 34018, unreported, demonstrates the weakness in appellee's position. In *Royal Am.*, a majority of this court held that a Euclid ordinance restricting municipal refuse collection to single- and two-family dwellings contravened the principle of equal protection. The majority in this case dismisses this decision as having no precedential value because the trial court in *Royal Am.* had not issued findings of fact and conclusions of law despite a timely request. Although the majority correctly recognizes that the absence of findings of fact and conclusions of law despite a timely request. Although the majority correctly recognizes that the absence of findings of fact and conclusions of law did not affect finality until *Walker v. Doup* (1988), 36 Ohio St.3d 229, 522 N.E.2d 1072, more than a decade after *Royal Am.*, the majority incorrectly concludes that this court was without jurisdiction to reach the merits in *Royal Am.* The majority cites no authority for the retroactive revocation of jurisdiction based upon a change in the law.

Furthermore, in 1975 App.R. 12(A) provided, in part: "All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error." In this context, it is difficult to discern how the majority in this case could conclude that the discussion in *Royal Am.* of the constitutionality of the Euclid ordinance would constitute *obiter dicta.* Contrary to the majority's assertion that *"Royal Am.* has no precedential value," Sup.R.Rep.Op. 2(G)(2) provides, "[E]ach unofficially published opinion or unpublished opinion *shall be considered persuasive authority on a court, including the deciding court, in the judicial district* in which the opinion was rendered." (Emphasis added.) This court may not, therefore, disregard *Royal Am.*

Even the dissent in *Royal Am.* demonstrates the flaws in Ordinance No. 90–117.

"[A]partment or condominium living concentrates large amounts of garbage at a single location, a fact which makes the collection of such garbage economically unfeasible for Euclid at this time.

"Therefore, it is my conclusion that persons who choose to live in apartment or condominium structures are living in circumstances unlike those who live in single or two-family residential structures. It is therefore not a denial of equal protection of the law to deny municipal refuse collection to apartment and condominium dwellers." *Royal Am., supra,* at 2 (Parrino, J., dissenting).

Of course, this larger-versus-smaller distinction is one of the arguments used by appellees, but Ordinance No. 90–117 strays from merely distinguishing larger and smaller structures. As a consequence, appellee's larger-versus-smaller argu-

ment lacks the internal logic of the dissent in *Royal Am.*, because Ordinance No. 90–117 also distinguishes among large structures solely on the basis of ownership.

The majority also ignores the initial challenge to Ordinance No. 90–117. In *Gertsma v. Berea*, Cuyahoga C.P. No. CV–199177, unreported, appellant Laurence Gertsma sought a declaratory judgment that "Ordinance No. 90–117 violates his right to equal protection of the law under the United States and Ohio Constitutions." *Id.* at 1. The court of common pleas held that "Ordinance No. 90–117 is unconstitutional because it violates the Equal Protection Clause of the United States and Ohio Constitutions." *Id.* at 4. In *Gertsma v. Berea* (May 12, 1994), Cuyahoga App. No. 65323, unreported, 1994 WL 189516, this court held that the court of common pleas lacked jurisdiction because the record did not reflect compliance with R.C. 2721.12, which requires serving the Attorney General with declaratory judgment proceedings. This court vacated the trial court's judgment but did not remand the case for further proceedings.

After appellants filed *Gertsma v. Berea*, Cuyahoga County Court of Common Pleas Case No. CV–303786, from which this appeal arises, the assigned judge transferred the case to the docket of the judge who presided over case No. CV–199177. Nevertheless, the judge who heard case No. CV–199177 returned case No. CV–303786 to the judge originally assigned to hear case No. CV–303786 because case No. CV–199177 had been decided on the merits.

The text of the memorandum of opinion and order issued by the court of common pleas in case No. CV–199177 is an exhibit to appellants' motion for summary judgment in case No. CV–303786. In case No. CV–199177, the court of common pleas observed:

"[T]he City can demonstrate no rational basis for burdening larger apartment buildings with the cost of private garbage collection, while exempting multi-family condominium units of comparable size. There is no discernible difference in the quantity or quality of waste produced by the inhabitants of these structures, and the accessibility of condominium structures and of greater than four-suite apartment buildings to waste-hauling vehicles is indistinguishable." *Id.* at 3.

The court of common pleas in case No. CV–199177 concluded that the classification in Ordinance No. 90–117 manifested the same constitutional defect as the ordinance challenged in *Royal Am.*:

"The classification is based upon the nature of the buildings involved, the volume of garbage produced in each, and the cost of collection of such garbage. The classification does not take cognizance of the fact that people in apartments and people in single- or two-family dwellings produce the same type of refuse. Citizens living in both types of residences require the removal of their garbage and rubbish on a regular basis for health and safety reasons. There is no

rational basis for the municipal decision not to collect garbage from inhabitants of apartments on the one hand and to collect it from inhabitants of residential dwellings on the other. Thus, Ordinance 49–1974 contravenes the principle of equal protection. See *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 373–374 [6 S.Ct. 1064], 30 L.Ed. 220, 227." *Royal Am., supra,* at 6 (Day, P.J.; Manos, J., concurs) quoted in case No. CV–199177 at 3–4.

As *Royal Am.* and the history of the controversy over Ordinance No. 90–117 demonstrate, the constitutionality of legislation such as that under review in this case is a very close question. *Royal Am.* was decided by a divided panel of this court. Likewise, two members of the court of common pleas have reached contrary conclusions regarding the constitutionality of Ordinance No. 90–117.

Clearly, the deferential standard governing judicial review of this kind of legislation ensures that courts do not substitute their legislative judgment for that of legislators. Despite this deference, however, courts must also ensure that laws provide equal protection to those affected by them.

The trial court in this case observed: "The Equal Protection Clause prevents governments from unreasonably treating similarly situated individuals differently. *Railway Express Agency v. New York,* 336 U.S. 106 [69 S.Ct. 463, 93 L.Ed. 533] (1949); *Nordlinger v. Hahn,* 505 U.S. 1, 112 S.Ct. 2326 [120 L.Ed.2d 1] (1992)." Ordinance No. 90–117 differentiates between residents of multiunit condominiums and residents of multiunit apartments. Although there may be a difference in the nature of ownership of multiunit condominiums and multiunit apartment buildings, that circumstance is a difference without a distinction for purposes of refuse collection. That is, regardless of ownership, there has been no demonstration of a distinction between residents of condominiums and residents of apartment buildings as to the need for refuse collection. In my judgment, no rational basis exists for providing municipal refuse collection for the residents of condominiums while excluding residents of apartment buildings with more than four dwelling units. Otherwise, municipalities would have an incentive to reduce expenditures by arbitrarily denying services to some residents. Depriving some residents of municipal services by means of a classification lacking a rational basis for distinguishing among residents and their need for those services contravenes the Equal Protection Clauses of the Ohio and United States Constitutions.

Accordingly, I would (1) reverse the judgment of the court of common pleas and instruct the court of common pleas to enter declaratory judgment on Count I of the complaint, holding that Ordinance No. 90–117 violates the Equal Protection Clauses of the Ohio and United States Constitutions; and (2) remand this case to the court of common pleas for consideration of Count II of the complaint, under

which appellants claim that they are entitled to damages due to the enactment and enforcement of Ordinance No. 90–117.