OPINION
{¶ 1} This is a postconviction proceeding. Appellant, Cameron Sterling, challenges the constitutionality of R.C. 2953.82. That statute bars the right of appeal from the denial by the county prosecuting attorney of an inmate's right to obtain DNA testing, where the inmate has pled guilty to the felony for which he is imprisoned. For the reasons indicated herein, we reverse the judgment entry of the trial court and remand for further proceedings.
 {¶ 2} Sterling was sentenced on March 11, 1991 to a prison term of six to twenty-five years, after previously having entered an Alford plea to the charge of rape. An Alford plea invokes the principle of NorthCarolina v. Alford, such that a defendant enters a plea of guilty, all the while professing his innocence, if the "`defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.'"[1]
It is well settled in Ohio that an Alford plea is procedurally indistinguishable from a traditional guilty plea, and is merely a "species" of a guilty plea.[2] Before a court may accept an Alford
plea, there must be strong evidence of guilt in the record.[3]
 {¶ 3} The statute being challenged by Sterling allows an inmate who pleads guilty to a felony offense to request DNA testing. The statute reads, in pertinent part:
 {¶ 4} "(A) An inmate who pleaded guilty or no contest to a felony offense that was committed prior to the effective date of this section [October 29, 2003] may request DNA testing under this section regarding that offense if all of the following apply:
 {¶ 5} "(1) The inmate was sentenced to a prison term or sentence of death for that felony and, on the effective date of this section, is in prison serving that prison term or under that sentence of death.
 {¶ 6} "(2) On the date on which the inmate files the application requesting the testing with the court as described in division (B) of this section, the inmate has at least one year remaining on the prison term described in division (A)(1) of this section, or the inmate is in prison under a sentence of death as described in that division.
 {¶ 7} "(B) * * * [t]he application and acknowledgement required under this division shall be the same application and acknowledgement as are used by eligible inmates who request DNA testing under sections 2953.71
to 2953.81 of the Revised Code.
 {¶ 8} "The inmate shall file the application with the court of common pleas not later than one year after the effective date of this section. Upon filing the application, the inmate shall serve a copy on the prosecuting attorney.
 {¶ 9} "(C) Within forty-five days after the filing of an application for DNA testing under division (B) of this section, the prosecuting attorney shall file a statement with the court that indicates whether the prosecuting attorney agrees or disagrees that the inmate should be permitted to obtain DNA testing under this section * * *.
 {¶ 10} "(D) If the prosecuting attorney disagrees that the inmate should be permitted to obtain DNA testing under this section, the prosecuting attorney's disagreement is final and is not appealable by any person to any court, and no court shall have authority, without agreement of the prosecuting attorney, to order DNA testing regarding that inmate and the offense or offenses for which the inmate requested DNA testing in the application."[4]
 {¶ 11} The record does not indicate whether Sterling had one year or more to serve on his prison sentence. For purposes of this analysis, we proceed on the assumption that he did have one year or more to serve on his six to twenty-five year sentence meted out to him in 1991. In so doing, he appears to qualify as an inmate who could apply for DNA testing.
 {¶ 12} Sterling filed his motion for DNA testing on August 12, 2003. While this was more than two months before the effective date of the statute, there is nothing in the statute to preclude a premature filing, and the trial court treated the motion as if it were timely filed.
 {¶ 13} Sterling's motion alluded to the fact that a semen sample was obtained from him in 1990, but that it was never analyzed. Had it been analyzed, argues Sterling, it would have demonstrated his innocence of the crime of rape. The prosecutor filed a response, requesting that his motion for DNA testing be denied. The prosecutor's response was filed on December 15, 2003; and on December 16, 2003, the trial court denied Sterling's motion for DNA testing. Sterling then appealed the denial of his motion to this court, asserting two assignments of error.
 {¶ 14} The first assignment of error is as follows:
 {¶ 15} "The trial court erred when it denied appellant's motion for DNA testing per Senate Bill 11 as R.C. 2953.82 is an unconstitutional violation of the separation of powers doctrine."
 {¶ 16} "[A]lthough the Ohio Constitution does not have a specific clause delineating the concept of the separation of powers, the doctrine can be implied from the manner in which that document defines the individual powers of the three branches of the state government."[5]
This court has previously explained the doctrine of separation of powers in the White v. Konteh case, as follows:
 {¶ 17} "Regarding the judicial authority of the state, Section 1, Article IV of the Ohio Constitution provides:
 {¶ 18} "`The judicial power of the state is vested in a supreme court, courts of appeal, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law.'
 {¶ 19} "Under the doctrine of the separation of powers, the powers of the judicial branch cannot be encroached upon by the legislative and executive branches; i.e., the doctrine is intended to protect the integrity and independence of all three branches. * * * Stated differently, `the administration of justice by the judicial branch of the government cannot be impeded by the other branches of government in the exercise of their respective powers.'"[6]
 {¶ 20} Thus, for example, the Supreme Court of Ohio has held, in the case of South Euclid v. Jemison, that the state legislature cannot delegate the authority of a court to a state agency.[7] In that case, the Registrar of the Bureau of Motor Vehicles was given the authority to review and reverse the judgments of municipal courts respecting driver's-license suspensions. The Supreme Court of Ohio found this to be violative of the separation of powers doctrine, and held that judicial authority can only be given to "courts," not to other types of public entities.[8]
 {¶ 21} "In essence, the Jemison court held that a judicial function cannot be performed by a non-judicial entity."[9] In our opinion, the procedure permitted in R.C. 2953.82, whereby the prosecutor is permitted, under subdivision (D), to deny an application for DNA testing, after it has been filed in the common pleas court under subdivision (B), emasculates the judicial function of the common pleas court and is violative of the separation of powers doctrine under the Ohio Constitution. The statute does not stop at the stage where the prosecutor is able to deny an inmate's application for DNA testing. Instead, it goes on to deny the inmate any right of appellate review to such a denial. Clearly, the state legislature has interfered in the judicial arena not only by allowing a prosecutor the unfettered ability to deny an inmate's application for DNA testing, but, then, to make sure the judiciary is rendered impotent, it took away any right to appellate review of such a denial. If the separation of powers doctrine has any meaning whatsoever, it must mean that judicial functions must be performed by the judiciary. The statute in question is a blatant interference with judicial functions and cannot stand.
 {¶ 22} For the reasons indicated, we hold that subsection (D) of R.C. 2953.82 is violative of the separation of powers doctrine and is unconstitutional. Sterling's first assignment of error has merit.
 {¶ 23} Sterling's second assignment of error is as follows:
 {¶ 24} "The trial court erred when it denied appellant's motion for DNA testing per Senate Bill 11 as R.C. 2953.82 is an unconstitutional violation of the Equal Protection Clauses of Section 2, Article 1 of the Ohio Constitution and the Fourteenth Amendment of the Federal Constitution."
 {¶ 25} Ordinarily, "`[c]onstitutional issues cannot be considered in postconviction proceedings * * * where they have already been or couldhave been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or in direct appeal from that judgment, and thus have been adjudicated against him.'"[10] In Sterling's case, however, the statutory right to apply for DNA testing did not become effective until October 29, 2003, or twelve years after his conviction. He could not have been expected to raise this issue at trial.
 {¶ 26} In addition, the question of constitutionality of a statute must be raised first in the trial court before a reviewing court will consider it.[11] "The general rule is that a reviewing court will only consider such errors in the lower court as were preserved by objection, ruling, or otherwise, in that court."[12]
 {¶ 27} Moreover, in a declaratory judgment action where a party is challenging the constitutionality of a statute, the attorney general must be served with a copy of the complaint or other proceeding.[13] The proceeding below, being a postconviction proceeding, was in the nature of a civil action,[14] however, it was not a declaratory judgment action, so the attorney general did not have to be served with a copy of the proceeding.
 {¶ 28} The question still is whether Sterling raised the issue of the statute's constitutionality in the trial court, and we find that he did so. In the memorandum attached to his motion for DNA testing, he says as follows:
 {¶ 29} "Upon this request for DNA test per Senate Bill (11), It is held State v. Scott (1987), 41 Ohio App.3d 313 @ 315. Where the State has the opportunity and resources to test body fluid and such testing would negate the guilt of the defendant, failure to test is a denial of fundamental fairness and, resulting in the denial of the defendant's due process. Brown v. Eyman (1970), 324 F Supp 339 @ 340."
 {¶ 30} By referring to the Scott case, as well as the concepts of "fundamental fairness" and "due process," Sterling asked the trial court to discuss the constitutional issues he now asks this court to review. The Scott case uses the phrase "fundamental fairness" in its decision and cites the case of Britt v. North Carolina in doing so.[15] The Britt
case was an equal protection case, and clearly turned on constitutional issues.[16]
 {¶ 31} However, Sterling's reliance on the case of State v. Scott is misplaced. In that case, the defendant, having been convicted of rape, contended on appeal that the trial court should have provided him an expert who could assist him with respect to eyewitness identification. There was no issue in that case with respect to DNA identification evidence. The appellate court held:
 {¶ 32} "In every case where an indigent defendant seeks state-funded expert assistance, the indigent defendant has the initial burden of establishing the reasonableness of his request. At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision. * * * Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate."[17]
 {¶ 33} A review of the record indicates that Sterling did not present sufficient facts to the trial court in order to establish the reasonableness of his request for DNA testing. He merely established that DNA specimens were extracted from the victim of the rape and from himself, and that these specimens were never compared to determine if a match existed. These are "undeveloped assertions" that the Scott court referred to, and do not constitute sufficient facts to establish the reasonableness of his request.
 {¶ 34} Sterling's reference to Bowen v. Eyman is more relevant to his request for a DNA test.[18] In that case, the defendant moved the trial court for a court-appointed expert to test the seminal fluid removed from the rape victim and from the defendant. Such request was denied by the trial court. The defendant petitioned for a writ of habeas corpus in the United States District Court, and sought relief on the basis that he should have been accorded such an expert in order to exclude him as the perpetrator of the rape. The court stated that "whether or not a defendant is entitled to a court-appointed expert depends on the facts and circumstances of the case," and went on to hold that "there can be no doubt in this case, where tests could have been run which might have excluded petitioner as the guilty party, fundamental fairness was not accorded the petitioner in refusing to appoint an expert."[19] The court further held that the "[trial court's] refusal to run the tests is tantamount to a suppression of evidence such as there was in Brady v.Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed. 2d 215 (1963), and a deprivation of due process."[20]
 {¶ 35} Sterling's motion for DNA testing does make clear that the prosecutor in his case requested the extraction of a DNA specimen from his person and that of the rape victim. There is no further indication in the record as to whether those specimens were further analyzed. This court will not speculate as to what the outcome of such a DNA analysis would have been in light of the fact that the test was not run. Instead, in light of the suggestion by Sterling that the doctrine of Brady v.Maryland was implicated in his case and that, had a DNA test been performed, such evidence could have been exculpatory, we would be inclined to consider such an issue if reflected in the record. Lacking any such data in the record, we are unable to dispose of Sterling's assignment of error on any ground other than a constitutional ground, and proceed accordingly.
 {¶ 36} Having properly raised a constitutional issue regarding R.C.2953.82, our analysis moves to the statute itself.
 {¶ 37} The statutory enactment sets up two different classes of inmates who may apply for DNA testing: those who entered a not guilty plea and were found guilty by a judge or jury; and those who pled guilty or no contest and were found guilty by a judge. In Sterling's case, he entered an Alford plea. Even though an Alford plea in Ohio is the legal equivalent of a guilty plea, as discussed above, the element of constitutional significance in an Alford plea is the defendant's protestation of innocence. The fact that a defendant who makes an Alford
plea protests his innocence puts him on the same footing, for purposes of a constitutional analysis of this statute, as one who enters a not guilty plea.
 {¶ 38} The mechanism to apply for DNA testing for those whose plea was not guilty, but who were found guilty, is set forth in R.C. 2953.71 to2953.81. The statute in question, R.C. 2953.82, provides the mechanism to apply for DNA testing for those whose plea was guilty or no contest, and were then found guilty.
 {¶ 39} Sterling challenges R.C. 2953.82 on the ground of a denial of equal protection of the laws, arguing that the state is according different treatment to those who have entered guilty pleas and those who have not. As a corollary to that argument, he says that there is no legitimate state interest in setting up the two mechanisms for those two different types of inmates, and that DNA testing should be available to prove one's innocence, irrespective of the plea that was formerly entered.
 {¶ 40} The state of Ohio counters Sterling's argument by saying that the Equal Protection Clause under the federal and state constitutions protects only those persons who are similarly situated from disparate treatment by the government, and that those who are convicted at trial are not similarly situated to those who have pled guilty or no contest. After all, one who pleads guilty or no contest waives his or her right to a trial, as well as all appealable errors that may have occurred at trial, unless such errors prevented him or her from making a knowing and voluntary plea, and finally, waives issues pertaining to factual guilt. Further, the state of Ohio argues that the standard of appellate review depends on the nature of the rights allegedly violated by the government, and that where "the challenged legislation does not affect a fundamental right and does not create a suspect class," appellate review is "limited to determining whether the distinctions drawn in the [statute] bear some rational relationship to a legitimate governmental objective."[21]
 {¶ 41} The state interest to be respected here, argues the state of Ohio, is the maintenance of efficient and just administration of DNA testing procedures. Those inmates who pled guilty could force the trial court to conduct a hearing relative to the request for DNA testing where no hearing was conducted before and no evidence was adduced previously. The cost to the taxpayers would be exorbitant, especially where the inmate did not contest his guilt, waived his or her right to a trial, and benefited from a plea bargain. Not to mention, the evidence to be adduced at such a hearing would be stale evidence. The state sums up by saying that the rational-basis test should guide this court in deciding the constitutionality of the statute in question: "[t]he rational-basis test says that legislative distinctions are invalid only if they bear no relation to the state's goals and no ground can be conceived to justify them."[22]
 {¶ 42} However, this court will not pursue a constitutional analysis if there is another basis upon which to dispose of this assignment of error. As stated by the Third Appellate District, "it is basic to appellate law that if an appeal may be disposed of without the constitutional issue the constitutional issue will be left undetermined."[23]
 {¶ 43} Having decided in our analysis under the first assignment of error that subsection (D) of R.C. 2953.82 violates the separation of powers doctrine and is, therefore, unconstitutional, we approach this second assignment of error as if the offending subsection of the statute were excised therefrom.
 {¶ 44} If subsection (D) of R.C. 2953.82 is found to be unconstitutional, then the equal protection analysis is rendered moot. The effect of this holding is that Sterling would still have a mechanism to apply for DNA testing, but now he would be similarly situated to those whose original plea was not guilty, but were then found guilty. The prosecutor could still disagree with the inmate's right to DNA testing, as provided under subsection (C) of the statute, but now that disagreement would not be final, the court could override that disagreement and order the DNA testing, and the inmate would have a right of appeal from the court's denial of DNA testing, as in any other case. Further, the remaining provisions of the statute, after removal of subsection (D), could withstand scrutiny under a rational-basis test, because they would then bear a rational relation to the state's goals. Finally, distinctions between this statute and other statutory mechanisms for DNA testing could then be justified under that test.
 {¶ 45} Therefore, we deem Sterling's equal protection argument and second assignment of error to be moot.
 {¶ 46} For the reasons indicated, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
Rice, J., concurs, O'Toole, J., concurs in judgment only.
[1] State v. Sterling, 11th Dist. No. 2002-A-0026, 2004-Ohio-526, at ¶ 26, quoting North Carolina v. Alford (1970), 400 U.S. 25, 37.
[2] State v. Bailey (July 24, 2000), 12th Dist. No. CA99-03-067, 2000 WL 1050950, at *1; Columbus v. Simmons (Dec. 28, 1999), 10th Dist. No. 99AP-310, 1999 WL 1262059, at *1; State v. Carter (1997),124 Ohio App.3d 423, 429.
[3] North Carolina v. Alford, 400 U.S. at 37.
[4] R.C. 2953.82.
[5] (Citations omitted.) White v. Konteh (Mar. 23, 1999), 11th Dist. No. 99-T-0020, 1999 Ohio App. LEXIS 1230, at *9.
[6] Id.
[7] South Euclid v. Jemison (1986), 28 Ohio St.3d 157, syllabus.
[8] Id. at 162.
[9] White v. Konteh, 1999 Ohio App. LEXIS 1230, at *10-11.
[10] (Emphasis in original.) State v. Roberts (1982), 1 Ohio St.3d 36,38, quoting State v. Perry (1967), 10 Ohio St.2d 175, paragraph seven of the syllabus.
[11] Mentor v. Milostan (Aug. 3, 1981), 11th Dist. No. 8-093, 1981 Ohio App. LEXIS 14627, at *2-3.
[12] Id.
[13] R.C. 2721.12. Cicco v. Stockmaster (2000), 89 Ohio St.3d 95, syllabus.
[14] State v. Saffold (Jan. 23, 1987), 11th Dist. No. 3634, 1987 Ohio App. LEXIS 5654, at *3.
[15] State v. Scott (1987), 41 Ohio App.3d 313, 314-315.
[16] Britt v. North Carolina (1971), 404 U.S. 226, 227.
[17] (Citations omitted.) State v. Scott, 41 Ohio App.3d at 315.
[18] Bowen v. Eyman (1970), 324 F. Supp. 339.
[19] Bowen v. Eyman, 324 F. Supp. at 340.
[20] Id.
[21] Gertsma v. Berea (1999), 135 Ohio App.3d 655, 659, citingState ex rel. Vana v. Maple Hts. City Council (1990), 54 Ohio St.3d 91,92.
[22] (Citations omitted.) Gertsma, supra, at 660.
[23] Marvin v. Davis (Dec. 21, 1981), 3d Dist. No. 9-81-24, 1981 Ohio App. LEXIS 12671, at *4.