THE STATE OF OHIO, APPELLANT, *v.* STERLING, APPELLEE.

[Cite as *State v. Sterling,* 113 Ohio St.3d 255, 2007-Ohio-1790.]

(No. 2005–2388—Submitted October 17, 2006—Decided May 2, 2007.)

256

**O'DONNELL, J.**

{¶ 1} The state of Ohio appeals from a decision of the Ashtabula County Court of Appeals, which held that R.C. 2953.82(D) violates the separation-of-powers doctrine and is therefore unconstitutional. Because R.C. 2953.82(D) provides that a prosecuting attorney's decision to disagree with an inmate's request for DNA testing is final and not appealable by any person to any court and further directs that no court shall have authority, without agreement of the prosecutor, to order DNA testing, it interferes with the exercise of judicial authority, violates the separation-of-powers doctrine, and is unconstitutional. Accordingly, we affirm the judgment of the appellate court.

{¶ 2} On November 3, 1990, Cameron Sterling forcibly raped a minor under the age of 13, and as a result, the Ashtabula County Grand Jury returned an indictment against him for the crime of rape of a child under the age of 13, carrying a penalty of life imprisonment. R.C. 2907.02(B). On January 2, 1991, pursuant to *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, Sterling entered a plea of guilty to an amended charge of rape of a minor without the specification of force, making him eligible for a sentence less than life imprisonment. The trial court accepted his plea and on March 12, 1991, sentenced him to a term of imprisonment of six to 25 years.

{¶ 3} More than 12 years later, on August 12, 2003, Sterling filed a motion in the Ashtabula County Common Pleas Court for DNA testing, asserting that the state recovered semen during its investigation of the offense and also collected DNA specimens from him, but never compared the samples. The prosecuting attorney disagreed with Sterling's request, and the trial court overruled the motion.

{¶ 4} Sterling appealed the trial court's denial of his motion for DNA testing to the Ashtabula County Court of Appeals, contending that the trial court erred in denying his motion and asserting that R.C. 2953.82 violates the separation-of-powers doctrine. He further claimed that it violated his right to equal protection of the laws, arguing that it treats those who plead guilty to offenses differently

from those who are found guilty at trial. The state asserted that in cases where the applicant has pleaded guilty or no contest, only the prosecuting attorney, who is ethically bound to seek justice, is in a position to determine whether DNA testing is warranted. The state further argued that the Equal Protection Clauses of the Ohio and United States Constitutions protect only similarly situated persons from being treated differently, and persons convicted at trial are not similarly situated with those who pleaded guilty or no contest. The appellate court held that R.C. 2953.82(D) violates the separation-of-powers doctrine and is unconstitutional, and it also concluded that "[i]f subsection (D) of R.C. 2953.82 is found to be unconstitutional, then the equal protection analysis is rendered moot." *State v. Sterling,* Ashtabula App. No. 2003–A–0135, 2005-Ohio-6081, 2005 WL 3047488, ¶ 44.

{¶ 5} The state has now appealed that determination to this court, arguing, "R.C. 2953.82(D) is constitutional as it relates to the separation of powers doctrine." We granted discretionary review regarding the constitutionality of the statute.

{¶ 6} On appeal, the state asserts that statutes are presumed constitutional and that the duty of a prosecuting attorney is to seek justice in accordance with the Ohio Code of Professional Responsibility, which ensures that prosecutors will not abuse their discretion with regard to requests made by inmates who have pleaded guilty or no contest to a felony offense and who file applications for DNA testing.

{¶ 7} Sterling, on the other hand, maintains that R.C. 2953.82(D) is unconstitutional as a violation of the doctrine of separation of powers because it denies a trial court the authority to grant a motion for DNA testing if a prosecuting attorney disagrees with such a motion filed by an inmate who has entered an *Alford* plea or a guilty plea, thereby giving the prosecutor sole discretion to decide whether to allow the DNA testing.

{¶ 8} We are therefore called upon to consider whether R.C. 2953.82(D), specifying that a prosecuting attorney's disagreement with an inmate's request for DNA testing is final and not appealable by any person to any court, and further directing that no court shall have authority, without agreement of the prosecuting attorney, to order DNA testing requested by an eligible inmate violates the doctrine of separation of powers.

## Statute at Issue

{¶ 9} We begin by reviewing R.C. 2953.82, which provides:

{¶ 10} "(A) An inmate who pleaded guilty or no contest to a felony offense may request DNA testing under this section regarding that offense if all of the following apply:

{¶ 11} "(1) The inmate was sentenced to a prison term or sentence of death for that felony and is in prison serving that prison term or under that sentence of death.

{¶ 12} "(2) On the date on which the inmate files the application requesting the testing with the court as described in division (B) of this section, the inmate has at least one year remaining on the prison term described in division (A)(1) of this section, or the inmate is in prison under a sentence of death as described in that division.

{¶ 13} "(B) An inmate who pleaded guilty or no contest to a felony offense, who satisfies the criteria set forth in division (A) of this section, and who wishes to request DNA testing under this section shall submit, in accordance with this division, an application for the testing to the court of common pleas. Upon submitting the application to the court, the inmate shall serve a copy on the prosecuting attorney. The inmate shall specify on the application the offense or offenses for which the inmate is requesting the DNA testing under this section. Along with the application, the inmate shall submit an acknowledgment that is signed by the inmate. The application and acknowledgment required under this division shall be the same application and acknowledgment as are used by eligible inmates who request DNA testing under sections 2953.71 to 2953.81 of the Revised Code.

{¶ 14} "(C) Within forty-five days after the filing of an application for DNA testing under division (B) of this section, the prosecuting attorney shall file a statement with the court that indicates whether the prosecuting attorney agrees or disagrees that the inmate should be permitted to obtain DNA testing under this section. If the prosecuting attorney agrees that the inmate should be permitted to obtain DNA testing under this section, all of the following apply:

{¶ 15} "(1) The application and the written statement shall be considered for all purposes as if they were an application for DNA testing filed under section 2953.73 of the Revised Code that the court accepted, and the court, the prosecuting attorney, the attorney general, the inmate, law enforcement personnel, and all other involved persons shall proceed regarding DNA testing for the inmate pursuant to sections 2953.77 to 2953.81 of the Revised Code, in the same manner as if the inmate was an eligible inmate for whom an application for DNA testing had been accepted.

{¶ 16} "(2) Upon completion of the DNA testing, section 2953.81 of the Revised Code applies.

{¶ 17} "(D) If the prosecuting attorney disagrees that the inmate should be permitted to obtain DNA testing under this section, the prosecuting attorney's disagreement is final and is not appealable by any person to any court, and no court shall have authority, without agreement of the prosecuting attorney, to

order DNA testing regarding that inmate and the offense or offenses for which the inmate requested DNA testing in the application."

## Judicial Authority

{¶ 18} Section 1, Article IV of the Ohio Constitution provides:

{¶ 19} "The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law."

{¶ 20} Furthermore, Section 3(B)(2), Article IV provides:

{¶ 21} "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * * [and] shall have such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies."

## Separation of Powers

{¶ 22} Although the Ohio Constitution does not contain explicit language establishing the doctrine of separation of powers, it is inherent in the constitutional framework of government defining the scope of authority conferred upon the three separate branches of government.

{¶ 23} In *State ex rel. Bryant v. Akron Metro. Park Dist.* (1929), 120 Ohio St. 464, 473, 166 N.E. 407, we held: "The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others."

{¶ 24} And in *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80, we stated in paragraph one of the syllabus: "The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers. (Paragraph one of the syllabus in *State ex rel. Foster v. Bd. of County Commrs.* [1968], 16 Ohio St.2d 89 [45 O.O.2d 442, 242 N.E.2d 884], approved and followed.)"

{¶ 25} Further, in *Fairview v. Giffee* (1905), 73 Ohio St. 183, 187, 76 N.E. 865, we stated that "each of the three grand divisions of the government must be protected from encroachments by the others, so far that its integrity and independence may be preserved." See, also, *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 463, 668 N.E.2d 457.

{¶ 26} On at least three occasions, this court has addressed statutory challenges involving the doctrine of separation of powers.

{¶ 27} In *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 28 OBR 250, 503 N.E.2d 136, we considered the constitutionality of R.C. 4509.101(B)(3)(a) and (D), which at that time authorized the Registrar of Motor Vehicles to review and reverse a trial court order suspending a driver's license, certificate of registration, or registration plates upon failure to provide proof of financial responsibility. See 139 Ohio Laws, Part I, 679–686. There we determined that R.C. 4509.101(B)(3)(a) and (D) could not withstand constitutional scrutiny under the separation-of-powers doctrine, because they clearly "grant[ed] appellate review to an executive administrator, in a manner that conflicts with the constitutional powers of the courts of appeals." 28 Ohio St.3d at 161, 28 OBR 250, 503 N.E.2d 136. Accordingly, we conducted a severance analysis and severed those sections from the statute. Id. at 164, 28 OBR 250, 503 N.E.2d 136.

{¶ 28} In *State v. Hochhausler*, 76 Ohio St.3d 455, 668 N.E.2d 457, we addressed the constitutionality of former R.C. 4511.191(H)(1), which at the time specified that after a driver received an administrative license suspension following a D.U.I. violation, no court had jurisdiction to grant a stay of the license suspension and that any order issued purporting to grant a stay "shall not be given administrative effect." 145 Ohio Laws, Part I, 547.

{¶ 29} In *Hochhausler*, we stated: "The legislative branch has no right to limit the inherent powers of the judicial branch of the government. *Hale v. State* (1896), 55 Ohio St. 210, 212–213, 45 N.E. 199, 200. Inherent within a court's jurisdiction, and essential to the orderly and efficient administration of justice, is the power to grant or deny stays. See *Landis v. N. Am. Co.* (1936), 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153, 158; *State v. Smith* (1989), 42 Ohio St.3d 60, 61, 537 N.E.2d 198, 200. To the extent that R.C. 4511.191(H) deprives courts of their ability to grant a stay of an administrative license suspension, it improperly interferes with the exercise of a court's judicial functions. Thus, the part of R.C. 4511.191(H)(1) that prevents 'any court' from granting a stay violates the doctrine of separation of powers and is unconstitutional." *Hochhausler*, 76 Ohio St.3d at 463–464, 668 N.E.2d 457.

{¶ 30} And in *State ex rel. Bray v. Russell* (2000), 89 Ohio St.3d 132, 729 N.E.2d 359, this court reviewed a constitutional challenge to former R.C. 2967.11, which allowed an executive branch parole board to impose a "bad time" extension on a prisoner's original prison term for offenses that would constitute a crime pursuant to Ohio or federal law, regardless of whether the prisoner was actually prosecuted for the offense. 146 Ohio Laws, Part VI, 11,007–11,009.

{¶ 31} In that case, we noted that the statute authorized the executive branch to prosecute and impose punishment for a crime; in doing so, the executive

branch acted as judge, prosecutor, and jury, which went beyond the role of the executive branch. We stated: "In our constitutional scheme, the judicial power resides in the judicial branch. Section 1, Article IV of the Ohio Constitution. The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary." Id. at 136, 729 N.E.2d 359. Accordingly, we held former R.C. 2967.11 unconstitutional, as it violated the doctrine of separation of powers. Id. at syllabus.

### The Instant Case

{¶ 32} R.C. 2953.82 requires a prosecuting attorney to file a statement with the court indicating agreement or disagreement with an inmate's request for DNA testing and specifies that the prosecuting attorney's disagreement is final and not appealable by any person to any court; it also provides that no court shall have authority, without the prosecutor's agreement, to order DNA testing.

{¶ 33} As stated in *Jemison*, supra, "[w]hile no exact rule can be set forth for determining what powers of government may or may not be assigned by law to each branch, * * * '[i]t is nevertheless true, in the American theory of government, that each of the three grand divisions of the government, must be protected from encroachment by the others, so far that its integrity and independence may be preserved.'" Id., 28 Ohio St.3d at 159, 28 OBR 250, 503 N.E.2d 136, quoting *Fairview v. Giffee,* 73 Ohio St. at 187, 76 N.E. 865.

{¶ 34} With the enactment of R.C. 2953.82(D), the General Assembly has authorized a prosecuting attorney to disagree with an application for DNA testing presented by an inmate who has pleaded guilty or no contest to a felony offense and has also made that disagreement final and not appealable by any person to any court, thereby confining the exercise of judicial authority to those instances where the prosecutor agrees with the application. The legislature, however, may not impede the judiciary in its province to determine guilt in a criminal matter—and DNA testing results affect that issue—nor can it delegate to the executive branch of government the power to exercise judicial authority.

{¶ 35} Insofar as the statute authorizes a prosecuting attorney to agree or disagree with an inmate's request for DNA testing, it comports with the exercise of authority by the executive department of government because the prosecutor is charged with the responsibility to prove guilt beyond a reasonable doubt. However, those portions of the statute that make the prosecuting attorney's disagreement final, and not appealable to any court, and that deprive the court of its ability to act without the prosecutor's agreement interfere with the court's function in determining guilt, which is solely the province of the judicial branch of government. See *Bray,* 89 Ohio St.3d at 136, 729 N.E.2d 359. Accordingly, R.C. 2953.82(D) violates the doctrine of separation of powers and is therefore unconstitutional.

## Severance Analysis

{¶ 36} Having concluded that R.C. 2953.82(D) is unconstitutional, we now consider whether subsection (D) may be severed from the remainder of the statute.

{¶ 37} With respect to statutory construction, R.C. 1.47(B) states: "The entire statute is intended to be effective."

{¶ 38} However, R.C. 1.50 provides: "If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

{¶ 39} In *Geiger v. Geiger* (1927), 117 Ohio St. 451, 455, 160 N.E. 28, this court set forth three questions to be answered to determine the propriety of severance:

{¶ 40} "(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?"

{¶ 41} Striking subsection (D) from R.C. 2953.82, which delegates judicial authority to the executive branch of government, meets the *Geiger* test in that the remaining parts of this statute are capable of standing alone, the severed part is not so connected with the general scope of the whole as to make it impossible to give effect to the legislative intent without it, and no words are necessary to separate the constitutional part from the unconstitutional part. Accordingly, R.C. 2953.82(D) is capable of being severed from the statute.

{¶ 42} The remaining parts of R.C. 2953.82 permit an eligible inmate who has pleaded guilty or no contest to file an application for DNA testing and authorize the prosecuting attorney to agree or disagree with that request. R.C. 2953.82(B) provides that the application for DNA testing should be submitted to the court of common pleas and that the court may then exercise its judicial authority to determine the disposition of the request subject to appropriate appellate review.

{¶ 43} Based on the foregoing, we affirm the judgment of the court of appeals declaring R.C. 2953.82(D) unconstitutional and remand the matter to the court of common pleas for further proceedings consistent with this opinion.

Judgment accordingly.

Moyer, C.J., Gallagher, Pfeifer, Lundberg Stratton and Lanzinger, JJ., concur.

O'Connor, J., not participating.

Sean C. Gallagher, J., of the Eighth Appellate District, was assigned to sit for Resnick, J., whose term ended on January 1, 2007.

Cupp, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Shelley M. Pratt, Assistant Prosecuting Attorney, for appellant.

Morganstern, MacAdams & DeVito Co., L.P.A., and Michael A. Partlow, for appellee.

William F. Schenck, Greene County Prosecuting Attorney, and Cheri L. Stout, Assistant Prosecuting Attorney, urging reversal for amicus curiae, Ohio Prosecuting Attorneys Association.